SARAH A. STEWART, APPELLANT, vs. JOHN O. MATHEWS, APPELLEE.

1. An appeal will not be dismissed on the ground that a motion for a new trial was not made in due time, nor on the ground that a bill of exceptions was not signed within the time allowed by law.

2. The filing by a referee of his findings and decisions does not become operative for the purposes of execution or appeal until after notice thereof to the parties. Such decision does not become a "final judgment" until the expiration of ten days from the giving of notice, when no motion is made for a new trial, rehearing, in arrest, &c.; and when such motion is made the judgment does not become final until the motion is denied, and the time for appealing begins to run from the filing of the decision in writing, denying the motion for a new trial. Chap. 3122, Act of 1879. Digest, page 858.

3. A deed of conveyance of land is good between parties though not proved or acknowledged for record, and though neither party is in possession.

4. A deputy clerk signing a tax deed A. B., Clerk by C. D., deputy, cannot properly sign as an attesting witness to the execution of the deed. He simply witnesses his own signature to the deed.

5. A deed purporting to convey land, executed by a daughter of a former owner now deceased and intestate, is effectual to convey her interest as an heir at law, though the estate of the deceased has not been administered. The title passes subject to valid claims of creditors.

6. A conveyance of the "south one-fourth of the southeast quarter" of a section is not void for uncertainty of description.

7. Where by a will two persons are named as executors, and the probate record shows that one of them refused to qualify, letters testamentary may be issued to the other as sole executor, and a deed executed by him as such, pursuant to a power contained in the will, carries the title.

8. A will authorized the executors to sell at public or private sale "all my lands on Orange lake, in Marion county, known as the McCormick plantation." Proof that a certain lot was occupied, fenced and used by McCormick, the decedent, in connection with other land adjoining, lying on Orange lake, and on which he resided, is competent to show whether the lot was considered by him to be a part of his plantation and which he intended should be sold.

9. A conveyance by an executor under a power of sale contained in a will, to a purchaser for a valuable consideration, is good against a former grantee whose deed was not recorded and who was not in possession, the purchaser having no actual or constructive notice of the former deed or of any claim of right under it.

10. Where a cause is tried before a practicing attorney, as a referee, who has kept a complete record of the proceedings, including the testimony, his rulings, exceptions thereto duly attested, filed with the pleadings and papers in the case, the same will be considered on appeal as a bill of exceptions.

Appeal from the Circuit Court for Marion county.

Trial and judgment by Mr. W. A. Hocker, attorney-at-law, as referee.

At the June Term, A. D. 1882, the appellee moved to dismiss the appeal. The facts are stated in the opinion.

*S. D. McConnell* for the Motion.

*John G. Reardon, contra.*

THE CHIEF-JUSTICE delivered the opinion of the court on the motion:

This was an action of ejectment tried before a referee, who rendered judgment in favor of the plaintiff.

The record of the trial and judgment was marked by the

clerk, "Filed in clerk's office of Marion county December 20, 1881, R. B. Bullock, clerk;" also marked, " Refiled by order of referee February 13, 1882."

On the 15th day of February, 1882, defendant's attorney gave notice that on the 22d February, 1882, he would make a motion before the referee for a new trial, and on the same day filed the grounds of the motion in the clerk's office. On the 27th day of March following the referee filed his decision of said motion as follows : " Upon consideration of the within motion of defendant for a new trial in the above entitled cause the said motion is refused.   It appearing to the referee from the certificate of the clerk that the clerk made a mistake in the date of the filing of the decision of the referee, and that said date should be the date of the payment of the referee's costs, to-wit: the 13th of February, 1882, the clerk is directed to correct the date of said decision and to mark said decision as filed on said 13th February, 1882."   This is signed by the referee, dated and filed March 27th, 1882.

A bill of exceptions was signed by the referee April. 24, 1882.

On the 28th March, 1882, the defendant, by her attorneys, entered an appeal from the decision of the referee, and filed the appeal bond duly approved April 26.

Appellee now moves to dismiss the appeal upon the grounds that the motion for a new trial was not made within ten days after the rendition of judgment by the referee ; that the motion was not heard within ten days after filing the referee's report ; that the bill of exceptions was not signed on the day of refusing a new trial, and time was not extended to prepare bill of exceptions ; and that the appeal was not taken within thirty days after judgment was rendered.

Neither of these grounds is available to obtain a dismis-

sal of an appeal, except the one last named.   The statute authorizes an appeal from any final judgment within thirty days after its rendition, whether a motion for a new trial was made or a bill of exceptions appears regularly in the record or not.

The only question is whether this appeal was taken within thirty days after the referee's judgment became a " final judgment."   Regarding the time of filing the record by the referee in the clerk's office, which is not material here, it does not appear that the referee gave notice to the parties of such time of filing, and we remark that the only evidence of such notice is the fact that on the 15th February, 1882, defendant's counsel gave notice of his motion for a new trial to be heard on February 22d before the referee, the referee having directed the filing of his record of the trial and judgment on the 13th February.   No presumption arises that appellant had notice of filing the referee's report until February 15, the date of the motion.   The motion having been submitted to the referee his decision thereon refusing the same was made and filed on the 27th day of March, 1882.   The appeal was entered the next day and perfected by filing the bond, duly approved, April 26. The appeal was, therefore, taken within thirty days after filing the decision of the motion for a new trial, when the finding became " final."

The third section of Ch. 3122, act of 1879, regulating proceedings before referees requires the referee to notify the parties of the filing of his judgment in the clerk's office, and that if there shall not be a motion for a new trial, rehearing, in arrest of judgment, &c., within ten days after giving such notice " the judgment shall stand confirmed as the judgment of the Circuit Court for execution or enforcement, subject to review on appeal or writ of error."   Most assuredly this statute does not intend that parties shall be

prejudiced by the judgment or report of the referee until they have notice of it, and it is equally clear that they have ten days after the record is filed to make their motion for a new trial, &c., after the expiration of which time, and not before, the judgment stands as the judgment of the Circuit Court for execution, &c. By section four, if a motion is made for a new trial, rehearing, &c., and is denied, " the referee shall file all the papers used on such motion together with his decision in writing with the clerk, and such decision and judgment or decree shall be entered in the minutes of the court, and stand as the judgment or decree of the court as in other cases." The effect of this section is that when a motion is made for a new trial the finding of the referee is subject to be set aside by him and until the motion is decided and the decision filed it does not become final, " and stand as the judgment or decree of the court " for execution.

The sixth section provides that the motion for a new trial must be brought to a hearing before the referee within ten days after motion filed, upon due notice to the opposing party. The notice was given that the motion would be heard before the referee for a new trial at a day within ten days from the date of filing the motion. No other day is mentioned as the time of the hearing and though the day of the actual appearance of the parties before the referee is not stated, the referee considered the motion, no objection thereto being made, and he afterwards decided it, filing his decision on the 27th day of March, 1882, after the expiration of ten days. The law does not require the decision to be made within the ten days. This decision of the motion refusing a new trial, gave finality to the judgment and fixes the time when the thirty days limited for taking an appeal begins to run. We are well satisfied that this is the proper construction of the statute. To hold that the appeal must

be taken within thirty days from the filing of the referee's report would produce the anomaly of an appeal pending in this court which suspends the jurisdiction of the Circuit Court or the referee, and a motion for a new trial pending at the same moment before the latter tribunal which it would have no power to decide. The Legislature intended no such absurdity.

The appeal having been taken within thirty days after the judgment became final, the motion to dismiss is denied.

At the present term the case was tried upon its merits. The facts of the case are stated in the following opinion.

*John G. Reardon* for Appellant.

*S. D. McConnell* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

This was an action of ejectment commenced by Mathews, appellee, against the appellant, tried before a referee, who gave judgment in favor of the plaintiff, and after denying a motion for a new trial the defendant appealed. The suit was brought to recover the southwest quarter of the southeast quarter of section twenty-eight, T. 12 S., R. 21 east, in Marion county.

It is agreed that the title was formerly vested in Paul McCormick as patentee of the United States.

The plaintiff offered in evidence a deed executed by Paul McCormick to Abner H. McCormick, dated February 2, 1858, proved for record December 12, 1878.

Defendant's counsel objected to the introduction of this deed on the ground that it was not shown that Abner McCormick was ever in possession of the land, and further that the deed was not proven or recorded for over twenty years after its execution.

The referee overruled the objection and admitted the deed in evidence, to which ruling defendant excepted.

The ruling was correct. A deed of conveyance is effectual except as against creditors and purchasers without notice when signed and sealed in presence of two subscribing witnesses and delivered, whether recorded or not; and such deed is valid as between parties and privies though neither party be in actual possession.

Plaintiff next introduced a deed executed by the clerk of Marion county, by his deputy, to S. K. Reddick, dated July 3, 1873, for unpaid taxes.

This deed was objected to by defendant, because it was not properly executed, the deputy clerk being one of the witnesses to the deed executed by himself. The referee properly rejected this deed for the reason stated. Another reason might have been added, and that is that the land in controversy is not included in it. It conveys the W. half of the S. W. quarter of section 28, and not the W. half of the S. E. quarter. This tax deed therefore does not convey the land sued for.

Plaintiff next introduced a deed of S. K. Reddick and her husband, S. C. Reddick, conveying to plaintiff, with other lands, the west half of the southeast quarter of section twenty-eight, dated February 3, 1875, filed for record March 4, 1875.

It was further proved that Mrs. Reddick was a daughter of Abner H. McCormick. The defendant objected to the introduction of this deed on the grounds : 1, that there was no proof of possession by Mrs. Reddick ; 2, because neither she nor Mathews have been in possession within seven years before the suit ; 3, because the pretended title is derived through the defective tax deed. The referee overruled the objection and received the deed in evidence, and the defendant excepted.

As to this deed there appears no valid objection to it as a link of title. Plaintiff insists that Mrs. Reddick's title

is derived by descent from her father, she being an heir at law of Abner H. McCormick, the grantee of Paul McCormick. It is not shown that she is the sole heir at law or whether Abner H. McCormick died testate or intestate. No will being shown, the presumption is natural that he died intestate, and the legal title descended to his heirs at law. As one of the heirs, or as sole heir, according to the facts, she had a legal title to a part or the whole of this land. The proof thus far does not show what other heirs may be entitled to inherit. Her legal title was conveyed by the deed, subject to the claims of creditors of Abner, if any there were, yet unpaid.

An attempt was made to show that the land had been actually occupied by Abner and by Mrs. Reddick and by Mathews, but the proof failed in that respect.

Assuming that Mrs. Reddick was the sole heir of Abner, it thus appeared that Mathews had a legal title when he rested his case.

The defendant introduced a deed executed by T. C. Ellis, executor, &c., of Paul McCormick, deceased, to Richard A. Stewart, dated 21st December, 1874, conveying with other lands, " the south quarter of the southeast quarter of Sec. 28, T. 12, R. 21, in Marion county."

This deed was objected to by plaintiff's attorney on the ground that it does not cover the land in controversy ; that it does not show the authority of the executor to sell ; that the title has been shown to be out of Paul McCormick long before ; and that the deed is not executed by J. Roberts, the other executor.

The referee decided that this deed does not describe the land in question and is void as to this land, for uncertainty. This deed, however, is endorsed by the referee as having been " read in evidence."

Defendant next introduced an attested copy of the pro-

bate of the last will and testament of Paul McCormick, deceased, dated March 7, 1871, with letters testamentary, issued to Thomas C. Ellis as sole executor thereof, dated December 21, 1873. By the will it appears that Thomas C. Ellis and John Roberts were appointed executors. The probate record states that John Roberts refused to act as executor and letters were issued to Ellis alone.

The will authorizes the executors to sell at public or private sale "all my lands on Orange Lake, in Marion county, Florida, known as the McCormick plantation."

Objections were made by plaintiff to the introduction of the will and letters testamentary, on the grounds: 1, that the will is not proved by either of the attesting witnesses; and 2, that the will limits the power of the executors to sell the lands known as the "Paul McCormick plantation," on Orange Lake, and that there is positive proof by Mr. Mathews' testimony that the land in controversy was not part of these lands.

The referee admitted the letters testamentary and the will to show the power of the executor under it, leaving to the defendant to subsequently identify the land in question as part of the land embraced in the power.

Mathews' testimony on the subject of identity is as follows: "The land in controversy is situated in Marion county, Florida, south of Orange Lake. This land was not known as belonging to the Orange Lake plantation of Paul McCormick. This tract of land is situated about a mile from Mrs. Stewart's house where she now lives. I think it adjoins Mrs. Stewart's. Paul McCormick's executor had not sold this tract of land when I bought it. It is not conveyed in the first deed of Thos. Ellis to Stewart."

George W. Wilson testified: "I know the land in dispute. It adjoins the other lands bought by Col. Stewart of McCormick's executor. It lies about half a mile from my

mother, Mrs. Stewart's house, and about one mile from the lake. During his life time Col. Stewart fenced this land and exercised ownership. My mother, Mrs. Stewart, has been in possession of this land since Col. Stewart's death." The referee refused to permit this witness to answer the question put by defendant's counsel, whether he knew that this piece of land is attached to and belongs to the McCormick plantation which Col. R. A. Stewart bought from T. C. Ellis, executor of Paul McCormick? This question was excluded on the ground that the proper way to show whether the land was a part of the McCormick plantation, was to prove " the number or other legal description."

The question ought to have been allowed. Mathews had testified that " this land was *not known* as belonging to the Orange Lake plantation of Paul McCormick." Other witnesses should be allowed to testify as to the same matter. Indeed, it appears from Mathews' testimony and from Wilson's that the McCormick plantation where he resided bordered on Orange Lake and the land in question was not in any way separate from, but lay *adjoining* other lands of the McCormick plantation on Orange Lake. A natural presumption would be that it was a part of a compact body of land composing the plantation, unless it appeared to be occupied adversely by other parties.

The deed of Ellis, executor, to R. A. Stewart, in connection with the will and letters testamentary, ought to have been (if they were not) both admitted, because the will having been admitted to probate and the decree of the Probate Judge standing unreversed, (however irregular the proceedings as to the method of proving the will) it cannot be ignored in a collateral proceeding, the Probate Court having full jurisdiction of the matter. The deed includes a part of the land at least. The " south quarter of the

southeast quarter of section 28" embraces half of the south-west quarter of the southeast quarter of the section; being half of the land sued for, and it appears from the evidence to have been a part of the compact body of land known as the McCormick plantation, on Orange lake, mentioned in the will, which authorized the executors to sell. John Roberts having, as appears by the Probate Court, refused to qualify, the letters so far as appears here, were properly issued to Ellis as sole executor. Williams on Executors, 6 Am. Ed., Vol. 1, p. 316, *et seq.*

An assessment roll was introduced but proves nothing affecting the rights of the parties.

The defendant introduced another deed executed by Thos. C. Ellis, executor, &c., of Paul McCormick, dated October 5, 1875, conveying the S. W. quarter of the S. E. quarter of section 28, (the land sued for) with other lands described also in the deed of December 21, 1874, to R. A. Stewart, the same grantee. The same objections were made to this deed as to the deed of 1874, and the objections were over-ruled and the deed received in evidence. We discover no valid objection to this deed to show that the residue of the S. W. quarter of S. E. quarter, section 28, which had not before been conveyed to him passed to R. A. Stewart.

Defendant next introduced a deed of R. A. Stewart to C. W. Keep, dated December 22, 1874, conveying the south quarter of the S. E. quarter of section 28. This deed was objected to because there was no description of the land in controversy, and because no title was shown in Stewart. The referee " sustained the first objection," and defendant excepted. It appears, however, that the deed in the record is endorsed, " read in evidence," and this is signed by the referee.

If the deed was rejected it was error. The deed certainly described one-half the land in question, and as part

of the chain of title to the half it should not have been rejected.

Defendant then offered a deed from C. W. Keep and wife to Sarah A. Stewart, the defendant, dated October 6, 1875, conveying among other lands the southeast quarter of section 28. This was objected to by plaintiff on the ground that no title was shown in Keep, and further, that the deed was not legally probated, the same being acknowledged in Marion county before a J. P. of Alachua county. The objection was sustained, the deed rejected and exception taken.

This ruling was error. 1. Both parties claim from Paul McCormick. His executor conveyed to Stewart, Stewart conveyed to Keep and Keep conveyed to this defendant at least one-half of the premises. 2. Whether the deed was legally proved or acknowledged for record or not, the deed of Keep to Mrs. Stewart was good as between them. Whether the title thus conveyed was a better title than that of the plaintiff depends upon the whole case made by the contending parties. All competent evidence of title offered by either party should be considered, whether as to the whole or as to a moiety of the land, in order to find what title either party has and whose right is superior.

Mathews and Thrasher testified to certain conversations with Ellis relating to the second deed made by him as executor to Stewart, and the reasons for making it, &c.; but this testimony was mere heresay, and of no value to affect the rights of these parties. Ellis was examined as a witness, and was not inquired of as to the matters testified of by Mathews and Thrasher.

The rights of the respective parties as they appear in the record may be stated as follows: Paul McCormick had title in 1858 to the land in controversy, and conveyed it by deed to Abner H. McCormick, by deed not recorded until

December 14, 1878. There is no evidence that Abner was ever in the actual occupation of it.

Sarah K. Reddick and her husband conveyed it to plaintiff, Mathews, February 3, 1875, by deed, recorded March 4, 1875. Sarah K. Reddick is the daughter of Abner H. McCormick, but whether she is the sole heir is not shown. But assuming that she is the sole heir, she conveyed the land to plaintiff, and thus plaintiff's title is made out, and he is entitled to recover unless this title is overcome by the proofs of the defendant offered at the trial.

Paul McCormick's executor sold and conveyed December 21, 1874, to R. A. Stewart by deed, executed under a power contained in the will, the south half of this property. This deed was proved for record before the clerk of Marion county December 21, 1874, and filed for record on the same day.

R. A. Stewart conveyed the same south half of this property by deed dated December 22, 1874, recorded March 3, 1875, to C. W. Keep.

C. W. Keep conveyed to S. A. Stewart, defendant, by deed dated October 6, 1875, the southeast quarter of section 28. This includes the same south half of the property in question. (It does not appear that more than the said south half had been conveyed to Keep, and therefore no more was lawfully conveyed to Mrs. Stewart by his deed.)

The second deed by Ellis, executor, &c., of Paul McCormick, conveyed to R. A. Stewart October 5, 1875, the S. W. quarter of the S. E. quarter of section 28, T. 12, R. 21, in Marion county. This covers the entire land in controversy.

The testimony shows that R. A. Stewart went into actual possession of all the land in controversy conveyed by this deed, at the date of the first deed to him by the executor, December, 1874, and his widow, the defendant, is still in possession.

The deed of Paul McCormick to Abner McCormick was not recorded until December 14, 1878, long after both the deeds of McCormick's executor to R. A. Stewart were executed, and Stewart went into possession. There is no testimony whatever that any one had actual possession of the land in question up to the time Stewart purchased. There is no testimony that R. A. Stewart had any notice of the conveyance by Paul to Abner H. McCormick, actual or constructive; nor that the purchase was not made in good faith and for a valuable consideration.

The act of November 15, 1828, declares that no conveyance of real property shall be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same shall be recorded.

Upon the case presented, including the conveyances offered and rejected but which should have been considered, the title deeds exhibited by the defendant had transferred the legal title to the whole of the land sued for to Richard A. Stewart as a purchaser for a valuable consideration, long before the record of the deed to Abner H. McCormick, and before Stewart had any actual or constructive notice of Abner's interest or the interest of his heirs. R. A. Stewart conveyed one-half the property to Keep, and Keep conveyed the same one-half to Mrs. Stewart, the defendant, all before the recording of the deed from Paul to Abner H. McCormick.

As the case here stands, therefore, Mrs. Stewart has title to the south half of the land in controversy, and it is not apparent what title the plaintiff has to any portion of it.

In the examination and consideration of this case we have not had recourse to the "bill of exceptions" in the record, deeming it doubtful whether it was presented to the referee and signed by him in due time, but we have

considered the record duly made and filed by the referee, which contains all the evidence, exceptions and proceedings in the case and is properly before the court as the record of the trial. Const. Art. VI, S. 17.

The judgment is reversed and a new trial ordered.

A petition for a rehearing filed by appellee was denied.