The Chief Justice
delivered the opinion of the court.
This was a bill in equity to subject certain lands to sale for money alleged to be due under an “obligation contracted for the purchase of said premises,” the lands being claimed as exempt from sale as the homestead of the debtor, who denies that the money is due under such an obligation within the meaning of the Constitution and laws on that subject. Williams, who is a co-defendant in the bill with the debtor, claims that he is an innocent purchaser without notice -of any legal or equitable lien. This appeal is from a decree that the land is subject to salé, and that it be sold to pay the alleged indebtedness.
The facts are that in 1875, Teate, complainant, owned four hundred acres of land in Jefferson county and conveyed the same to Porter, in consideration of which Porter conveyed to Teate certain lands in Georgia by warranty deed, with full covenant, as to title, against incumbrances, and for possession, &c. In 1876, Teate, having taken possession of the Georgia land, was ousted therefrom by a sale thereof by the United States Marshal of Georgia under an execution issued upon a judgment lien antedating’.the conveyance by Porter. Teate then, in 1877, recovered a judgment in the Circuit Court for Jefferson county against Porter upon the covenants contained in his deed to Teate, foi* over four hundred dollars. Execution having been issued upon this judgment, the lands in Jefferson county were sold by the sheriff for $100, and Teate became the purchaser. Meantime, Porter claimed 160 acres of the 400 as his homestead. In an action of ejectment by Teate against Porter, the 160 acres were held to be exempt, and Teate failed to recover the same under his execution sale and sheriff’s deed. This bill was then filed, claiming that the 160 acres was not in equity exempt from sale under the exemption clause of the Constitution, and praying a decree of sale to satisfy the balance of the money due.
The provision of the Constitution under which the claim of exemption is made contains this exception: “But no property shall be exempt from sale for taxes, or the payment of obligations contracted for the purchase of said premises.” (Article IX., Section 1.)
The ultimate purpose of the homestead exemption is to protect the head of a family and the family from want and penury, and from being homeless by reason of misfortune. But it was never intended by these laws that a purchaser and his family should possess and enjoy property not paid for within the spirit of the contract of purchase, while the seller and his family were not compensated for it. There is no equity in allowing a purchaser and his family to obtain the homestead of another man and his family, and keep it, by any subterfuge or overreaching, by which the seller’s family is turned out of doors, and get nothing for their .home. A homestead obtained by fraud, or the semblance of fraud, is not contemplated by tlie law.
Here is a case where the seller of land parts with his property in consideration of other property conveyed to him, with a covenant that the latter is free of incumbrances, the title is unassailable, and that he shall enjoy it, while at very moment, according to the evidence, thé' property was encumbered beyond the warrantor’s means of redemption, or his disposition to redeem.
I see no way to avoid the' conclusion that the covenant contained in the deed of Porter to Teate was the only valuable consideration received by the latter for the land in Jefferson county. The effect of the covenant was that if the ’consideration for the sale of the Jefferson county lands, to-wit: the title to the Georgia land failed, the covenantor would pay its value in money, and this covenant to pay money was an “obligation contracted for the purchase of said premises.” The breach of the covenants and the value of 4he consideration was legally established by the action and recovery of judgment by Teate aginst Porter. The judgment establishes the amount due Teate of the consideration for the sale of the Jefferson county land, which had not been paid or otherwise satisfied.
Whatever the effect of the transaction might have been upon the question affecting the equitable lien for “for purchase money,” as recognized in equity jurisprudence, the provision of our Constitution expressly declares, that the land is liable to make good an “obligation contracted for the purchase of said preimses,” as against the premises claimed as a homestead by Nthe purchaser.
I have found no case presenting facts precisely similar, but the principle to be applied here is fully recognized in Whitaker vs. Elliott, 73 N. C., 186. There Whitaker sold to Elliott a quantity of land, and the consideration was paid by Elliott in notes, which he held against one Wilkins, by indorsing them to plaintiff. The notes were received by Whitaker in payment for the land. Judgment was obtained by Whitaker against Elliott upon his liability as in-dorser on one of the notes.
Elliott claimed thaf the land was exempt from sale as *211 his homestead. The constitutional provision was precisely like that in Florida, as above quoted. The court says: “The word ‘obligation/ as here used, means a debt contracted to be paid, or a duty to be performed by the purchaser as the consideration of the purchase of the premises. * * The case, then, falls directly within the restriction of the Constitution excluding him from 'a homestead which he has not paid for, and of which, therefore, he is not the owner as against the obligation contracted for its purchase. The principle is. a salutary one and founded on the highest degree of mortality and good faith.”
The obligation of the indorser was that of a surety, and his liability was contingent upon the failure of the surety to pay the notes which were transferred and received in payment for the land'. In a similar case in Georgia, Lane vs. Collier, 46 Ga., 580, the same rule was maintained'.
The liability of Porter upon his covenant to pay the money was also contingent upon a breach of its stipulations.
Whether this was a sale or a technical exchange of land, cannot affect the principle. “If, after an exchange’ of lands or other hereditaments, either party may be evicted of those which were taken by him in exchange through defect- of the other’s title, he shall return back to the possession of his own by virtue of the implied warranty contained in all exchanges.” (2 Bl. Com., 323.) But it is agreed in the argument of this case that by the terms of the deed this was a sale of lands.
There was testimony in this \suit going to show, as is claimed, that the 240 of the 400 acres sold under the execution against Porter, and the crops thereon at the-time of sale, though bid in by Teate at $100, were in fact worth about the amount of the judgment, and it is claimed by Porter that it is inequitable that Teate shall keep the 240 acres and crops without giving Porter credit -for what they are proved to be actually worth. If we should turn the point of this argument toward Porter, it might be asked of him that he surrender to Teate all that he obtained- from him without adequate compensation. After obtaining his property for nothing, with what grace can he appeal to the law to exempt it to him without paying the value or price of the same property? There is no proof, however, that the sale was not fair and public, or that it lias been so adjudged. If the 240 acres were worth a much larger sum than they sold for, there seems no reason to suppose that Porter was prevented from bidding or procuring others to bid more. There appears no ground for the claim that Teate should pay more than he was willing to pay for the land and crops or that the sale was unfairly conducted.
It is further urged by counsel for Porter that his wife is a necessary party in this suit, because of the peculiar right of property in a homestead vested in the husband and wife by the Constitution. If there is such investiture of right or of title to the homestead in the wife, it cannot prevail as against an obligation for the purchase of the premises since, as to a debt of this character, there is no right of homestead. (See Thompson’s Homesteads and Exemptions, Sec. 362, and authorities there cited.) Like a mortgage or other equitable lien for the purchase money, the ivife’s interest is subordinate to its payment. The wife of Porter was not a-party to the deed or its covenants.
As to defendant Williams, it is alleged in the bill that hé is in possession under Porter, but that Williams went in with full notice of the transaction of Porter’s obligation?, and of the judgment and of complainant’s rights. Williams, in his answer, says he has no particular knowledge of the transactions, but “living in -the same part of the county as the land is situated, at the time of the alleged exchange between the parties, and ever since he has heard these transactions talked about, and has a general knowledge in regard thereto,” and that Teate having failed in his ejectment suit to recover the 160 acres from Porter, and Porter being in peaceable possession of the homestead tract, and “finding it inconvenient to reside upon the said tract, bargained the same to this respondent, and promised to malee a deed thereto to him,” and gave him possession of the homestead tract, “who holds the same under the -said bargain and purchase, and has made valuable improvements and is planting his crops upon said lands.”
There is no denial of the charge that Williams went in with full notice of complainants’ rights, oí the judgment, and the obligations of Porter in the premises. There is no claim made by Williams that he has paid anything, or obligated himself to pay anything for the property, and no statement as to the character or value of the “improvements” he has made, and there is no intimation that he has entered into any valid contract for the purchase. Porter is under no obligation to him, nor is he under any obligation to Porter, according to the tenor of his answer. He is merely in possession, “holding the same under respondents’ title,” in the language of Porter’s answer. He offered, no proof in support of his claim. We cannot regard him as an innocent or bona fide purchaser, without notice of complainant’s equities. It is further remarked that the proofs show that the consent of the County Judge to the sale by Porter of the “homestead” bears date subsequent to the commencement of this suit, and therefore Williams’ must have been made with notice, under the rule of lis pendens. ■
We are of opinion that the decree of the chancellor is fully sustained by the facts and the law and equity of the case, and it must be affirmed.