JAMES F. MANSFIELD AND JOSEPH J. BISHOP, COPARTNERS
DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF
MANSFIELD & BISHOP, PLAINTIFFS IN ERROR, v. JAMES E.
JOHNSON, DEFENDANT IN ERROR.

1.  Where plaintiffs and defendants' in ejectment claim land
    through a common source of title, or where the defendant
    himself produces evidence recognizing the existence and
    validity of a deed through which both parties plaintiff and
    defendant claim rights and interests in the land in con-
    troversy, errors committed' in allowing improper evidence
    of the title, or improper proof of the execution of such
    deed on the part of the plaintiff are harmless.

2.  Where during a term of the Circuit Court a formal judg-
    ment in a case is written out and signed by the judge,
    which is by the clerk recorded upon the minutes of the
    court to the minute entry of which is appended a certifi-
    cate by the clerk to the effect that the foregoing copy of
    final judgment is a true and correct transcript of the
    same as appears upon the files and records of his office,
    such minute entry becomes properly a part of the record
    of the court, and a properly certified copy thereof is ad-
    missible as evidence of the existence of such judgment.
    The minute entry need not be certified by the clerk, where
    the minutes have been duly signed by the judge at the
    conclusion of the term as required by statute, but the fact
    that the clerk's certificate is attached to the minute entry
    does not make that entry any the less a   record   entry
    proper to be certified as such.

3.  A properly certified transcript of a judgment signed by the
    judge and entered upon the minutes of the Circuit Court
    during a term, taken from the minutes, when properly re-
    corded in the Record of Foreign Judgments of another
    county in 1891, became a lien upon the real estate of the
    judgment debtor in the latter county from the time of its
    record, and a properly certified transcript of such recorded
    judgment from the Record of Foreign Judgments is admis-
    sible in evidence to prove the fact of such record.

4. The custodian of a record having authority to certify a transcript thereof has authority to specify in his certificate the particular record from which the transcript is taken, and such certificate is at least prima facie evidence of the fact certified.

5. It is the duty of Clerks of the Circuit Courts who have authority to record documents or to make entries in the records of which they have custody, in the course of their official duty, to note on such records the date upon which they record such instruments or make such entries, which notes parts of such record, and the dates specified in such notes are to be taken as prima facie correct. In certifying such entries the clerk also has authority to certify such notes and the certified copies are admissible on account of the inconvenience of removing the originals.

6. Where an original execution has been returned to the court which issued it, the clerk of that court having the custody of such original has authority under the statutes of this State to certify a copy of the original, and such certified copy is admissible in evidence without producing the original.

7. Recitals in recorded deeds not constituting links in the chain of title of a judgment debtor and to which he is not a party, which purports to show equities in third persons, are not notice to a judgment creditor of equities claimed by such third persons.

8. If at the time a lien is acquired by a judgment creditor he has no notice actual or constructive of equities of third persons in real estate the title to which stands in the name of the judgment debtor as the apparent absolute owner, the purchaser at the execution sale, whether such purchaser be the judgment creditor or another, takes a good title and is protected as a bona fide purchaser, even though the creditor or purchaser had notice of such equities at the time of the sale.

9. A judgment creditor who purchases at his execution sale real estate the title to which at the time of the entry or record of his judgment, stood in the name of his judgment.

debtor, takes a good title as against persons to whom the judgment debtor conveyed the title, even though the title was originally taken in the name of such judgment debtor oy the consent of such persons in trust for them, where at the time the judgment was entered or recorded no declaration of trust or other conveyance from the judgment debtor declaring such trust had been recorded.

10.  Where an execution has been levied upon all the right, title and interest of a judgment debtor in real estate, and a sale has been had and a deed executed in pursuance of such levy and sale conveying all such right, title and interest to the judgment creditor, such purchaser is not estopped from claiming the entire property so levied upon sold and conveyed by the mere fact that he was silent at the sale when a third party protested against the sale announcing that the judgment debtor only owned an undivided one-fifth interest in the property.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Hernando County.

STATEMENT.

In July, 1896, the defendant in error, hereinafter referred to as the plaintiff, instituted an action of ejectment against the plaintiffs in error, hereinafter referred to as the defendants, in the Circuit Court of Hernando county. The defendants filed their plea of not guilty, and upon application of the parties the cause was referred to a practicing attorney as referee for trial. A trial was had before the referee, who found for the plaintiff the fee simple title in and the right to possession of the land in controversy, and damages for mense profits in the sum of $500. Judgment having been entered upon the finding the defendants sued out this writ of error, and assign as

error certain rulings admitting documentary evidence over defendants' objections, and the ruling denying a motion for a new trial interposed by them. The grounds of the motion for a new trial were that the findings of fact made by the referee were not warranted by and were contrary to the evidence, and the judgment entered by him was not warranted by the evidence and was contrary to the law of the case. The evidentiary bill of exceptions appearing in the record purports to have been made up and settled at the instance of the plaintiffs in error in support of an assignment of error predicated upon the refusal of the referee to grant a new trial on the ground that the findings of fact made by him were contrary to the evidence or not supported thereby, and contains the written demand of the plaintiff that all of the testimony shall be reviewed for the purpose of showing that any error in law is in view of the whole testimony a harmless error. From the evidence it appears that the land in controversy was originally owned by one John Eubanks, who for a long period of time exercised acts of ownership over it; that by his last will and testament he gave power to his executor to sell and convey it; that on August 6th, 1881, the executor of Eubanks entered into a contract with Geo. F. Drew, John L. Inglis, C. C. Keathley, J. M. Taylor and George K. Broome, for the sale of the land; that by mutual agreement between the parties the deed was to be made to Drew who was to hold the title in trust for himself and the other purchasers, each furnishing one-fifth of the purchase money; that on September 28th, 1881, the executor of Eubanks executed a deed conveying said property to Geo. F. Drew, his heirs and assigns in fee simple, with no mention of trust; that on April 8th, 1882, Geo. F. Drew filed his bill in the Circuit Court of Hernando county, Florida, against John P.

Wall, John P. Wall, Jr., and John A. Eubanks who were alleged to be the heirs at law of John Eubanks deceased, alleging the making of the deed by the executor of Eubanks to Drew; that questions had been raised as to the sufficiency of Drew's title under said deed, and praying that the sale by the executor be confirmed, and Drew's title quieted as against the parties named as defendants. Such proceedings were had that on May 8th, 1882, the court entered a decree confirming the sale and deed by the executor, and quieting Drew's title under said deed as against the defendants, heirs of John Eubanks deceased. Thereafter on December 26, 1888, John A. Eubanks executed a deed conveying the same property to Geo. F. Drew, his heirs and assigns in fee simple. No mention is made of the trust upon which Drew was to hold the property in the deed executed by John A. Eubanks or in the court proceedings for quieting Drew's title. Geo. F. Drew executed a certain instrument purporting to have been executed in 1883, which after reciting the making of the deed to Drew by Eubanks' Executor, of September 28, 1881, and the agreement of August 6, 1881, between Drew and Inglis, Keathley, Taylor and Broome for the purchase of the property from Eubanks' Executor, and that the title was to be taken in the name of Drew for the use and benefit of the parties named, declared that Drew held said property in trust for the parties named for certain uses and purposes therein specified. This instrument was not recorded until February, 1892, and then without any acknowledgement or other proof of execution. On February 12, 1892, Drew and wife executed a deed conveying to Keathley, Taylor, Inglis and Broome an undivided four-fifths interest in the property in controversy, for the expressed consideration of $8400. This deed made no reference to the trust upon which Drew held the prop-

erty, and was recorded February 15, 1892. On May 17, 1884, Keathley conveyed to one John T. McKeown one-half of his undivided one-fifth interest in the lands in controversy, the deed reciting that the lands were then owned by Drew, Taylor, Inglis, Keathley and Broome. This deed was recorded May 17, 1884.

The defendants in this suit were in possession, claiming under one Knight who held a lease from Inglis, Taylor, Broome and the administrators of the estates of McKeown and Keathley. At various times subsequent to the deed from Eubanks' executor to Drew, the latter executed conveyances embracing portions of the land, and in 1890 he also executed a mortgage covering an undivided one-fifth interest in all of the land, but in none of these conveyances was the trust mentioned, nor was there an intimation that Inglis, Taylor, Keathley or Broome had any interest in the land.

On February 17, 1891, the plaintiff Johnson began an action of assumpsit against Drew in the Circuit Court of Duval county. Drew was duly served with subpoena, appeared and filed pleas, and such proceedings were thereafter had that on May 11, 1891, during a term of the court then being held, judgment was entered in favor of the plaintiff Johnson against Drew for $1165.51 and costs. A copy of this judgment duly certified by the Clerk of the Circuit Court of Duval county was filed with the Clerk of the Circuit Court of Hernando county, Florida, and recorded by him in the Foreign Judgment Book on May 19th, 1891. On June 13, 1891, an execution was issued upon the judgment by the Clerk of the Circuit Court of Duval county, which on January 2nd, 1892, came to the hands of the sheriff of Hernando county who afterwards, the precise date not being shown, levied it upon all the right, title and interest of Drew in

the lands in controversy.   The property was sold on the
first Monday in March, 1892, under said execution and
purchased by the plaintiff, and the  sheriff executed  to
plaintiff a deed conveying all the estate, right, title and
interest of Drew in the property in controversy, in  pur-
suance of such sale.   There is testimony tending to show
that at the time of the sheriff's sale Keathley was pres-
ent and protested against the sale, announcing that Drew
only owned an undivided one-fifth interest, but there is
no suggestion in the evidence that Johnson had any no-
tice that Drew did not own the entire interest at the time
his judgment was recorded in Hernando county.   Other
facts will be found in the opinion.

*Shackleford & Pettingill,* for Plaintiffs in Error.

*A. W. Cockrell & Son,* for Defendant in Error.

CARTER, Circuit Judge, *(after stating the facts).* Plain-
tiff offered in evidence a certified copy of the record of
the deed from Eubanks' executor to Drew.   Defendants
-objected to its introduction upon the ground  that  the
deed had never been legally proved for record or recorded.
The acknowledgement states that the grantor  "acknowl-
edged that he signed the foregoing deed of conveyance
for the purposes therein specified."   Plaintiffs in  error
argue that an acknowledgement of the *signing* is not an
acknowledgement of the *execution* of the instrument, and
that consequently their objections were well taken and
should have been sustained.   In Rhodus v. Hefferman,
47 Fla. 206, 36 South. Rep. 572, it was held that where the
plaintiffs and defendants in ejectment claim land through
a common source of title, errors committed in allowing
improper evidence of the title under which all the par-

ties claim are harmless. As will be seen from the statement of the facts the parties plaintiff and defendant claim through this deed, and the defendants themselves produced evidence recognizing its existence and validity. Under these circumstances it is unnecessary for us to determine whether the acknowledgement was sufficient to entitle the deed to record, so as to make the certified copy prima facie evidence of the due execution of the deed, as any error that may exist in the ruling admitting the document in evidence is for reasons stated, harmless. This disposes of the first assignment of error.

The second assignment of error is expressly abandoned.

The third assignment of error is based upon the ruling admitting over objections a certified transcript of the record of the judgment obtained by Johnson against Drew. The transcript after setting out the praecipe, summons, return, declaration and other proceedings recites that "subsequently to-wit: On the 11th day of May, 1891, during the regular term of said court, certain proceedings were had and judgment rendered as shown by the minutes of said term and the judgment docket as follows, to-wit." Here follows what purports to be the final judgment dated May 11, 1891, signed, "W. B. Young, Judge," and immediately thereafter a certificate of Noble A. Hull, then Clerk of the Circuit Court of that county "that the foregoing copy of final judgment is a true and correct transcript of the same as appears upon the files and record of said office," dated May 15th, 1891. The certificate to the transcript of the entire record of that judgment made by P. D. Cassidy, Clerk, on October 25, 1897, is "that the foregoing pages numbered from 1 to 9 inclusive constitute a true copy of all the proceedings and a correct transcript of the record of the judgment in the case of James E. Johnson as plaintiff, and

George F. Drew as defendant, as appears upon the files and records of my office." The objection interposed was that the transcript offered did not contain a copy of the original judgment, but merely a copy of a certified copy of such original. We think it evident that the final judgment was written out and signed by the Judge on May 11, 1891, during a term of the court, and that this judgment so signed was by the Clerk entered upon the minutes of the court on May 15th, 1891. As the minutes are required to be signed by the Judge at the end of each term, it was perhaps unnecessary for the clerk to enter upon the minutes immediately following the entry of the judgment therein the certificate which he did enter in this case, but the fact that he did so does not invalidate the minute entry nor make the minute entry any the less a record entry, proper to be certified as such. As we construe the certified copy of the transcript of the judgment, the judgment entry and certificate of Hull, Clerk, appended thereto, were taken from the minutes and the judgment docket which are original records and not mere copies of records. There was no error in the ruling here complained of.

The fourth assignment of error questions the propriety of the ruling admitting in evidence over defendants' objection, a certified transcript of the record of the judgment of Johnson vs. Drew, as recorded in the Foreign Judgment Book by the Clerk of the Circuit Court of Hernando county. The objections interposed were that "it is not shown by the paper itself that it is a copy of a judgment recorded in Duval county and the fact that it may have been recorded in Hernando county is not shown by the certificate of the Clerk of Hernando county so as to entitle it to be received as evidence," and "because the certificate of the Clerk of Hernando county is not

proof of the date of the record of the same by him." The
document offered purports to be a copy of the judgment
signed by Judge Young dated May 11, 1891, to which is
attached a certificate by the Clerk of the Circuit Court of
Duval county dated May 15, 1891, that the "foregoing
copy of final judgment is a true and correct transcript
of the same as appears upon the files and records of my
said office." Immediately following this certificate are
the words "Recorded May 19, 1891, Frank E. Saxon,
Clerk Ct. Ct. H. C. by S. A. Wilson, D. C.," and then fol-
lows a certificate by the Clerk of the Circuit Court of
Hernando County, Florida, dated March 12, 1898, that
the "within and foregoing" is a "correct transcript of the
record of the final judgment in the case of James E. John-
son vs. George F. Drew, as it appears of record in For-
eign Judgment Book 1 at page 47." Under the statutes
in force at the time the judgment was recorded in Her-
nando county, judgments at law were not liens upon real
estate in counties other than the one where rendered, un-
less recorded in the county where the real estate was sit-
uated (Sec. 2, p. 619, McClellan's Dig.) ; the clerks were
required to provide a suitable book to be entitled Record
of Foreign Judgments in which they were required to re-
cord judgments when regularly presented to be recorded,
and a judgment was entitled to be placed upon the record,
upon the presentation of a transcript of same regularly
certified under the seal of the court. Secs. 13 and 14, p.
175, McClellan's Dig. The transcript of the judgment
offered was certified as being a correct transcript from
the Foreign Judgment Book, and the judgment as there
recorded appears to have been regularly certified by the
Clerk of the Circuit Court of Duval County under the
seal of the court. The objections interposed to its intro-
duction were untenable. A certified copy of the record

of the judgment in the Foreign Judgment Book, taken from that book, was competent evidence of the record of the judgment in that book, and it was not necessary to produce the document which had been recorded upon that book to prove that fact as contended here. We are also of opinion that the custodian of a record having authority to certify a transcript thereof has authority to specify in his certificate the particular record from which the transcript is taken, and that such certificate is at least prima facie evidence of the fact certified. Under our law, Clerks of the Circuit Court are the custodians of various records, such as the minutes of the court, foreign judgment records, records of mortgages, deeds, &c. He has power to certify any portion of these various records, as for instance that the transcript of a judgment is taken from the minute book; of a deed that it is taken from the deed record; of a declaration or plea, that it is from the files of a particular case, and the like. Having the power to certify the entire records or any particular portion thereof, he must necessarily have power to limit his certificate to the particular part certified, otherwise his certificate would be nugatory as in every instance it would be necessary to produce the original record or other proof along with the certified copy to show that the certified copy was taken from the proper record, and not from some other record in the office. Rev. Stats. of 1892, Secs. 1109, 1111. We are also of the opinion that it is the duty of Clerks of the Circuit Court who have authority to record instruments or to make entries in the records of which they have custody, in the course of their official duty, to note on such records the date upon which they record such instrument or make such entries; and that such notes become parts of such record, and the dates specified in such notes are to be taken as prima facie cor-

rect. In certifying such entries the clerk also has authority to certify such notes, and the certified copies are admissible on acount of the inconvenience of removing the originals. This is true upon general principles although we have no statute enacting such a rule. Bell v. Kendrick, 25 Fla. 778, 6 South. Rep. 868.

The fifth assignment of error is based upon the ruling admitting in evidence a certified copy of the execution issued upon the judgment in favor of Johnson against Drew under which the sheriff's sale was had. The objections interposed were that the original execution was the best evidence and that no sufficient predicate had been laid for its introduction. The first objection was untenable because the original execution had been returned to the court which issued it, and the copy offered was certified by the clerk of that court who had official custody of the original, to be a true copy of such original. Under those circumstances it was not necessary to produce the original, and the certified copy was admissible. Sec. 1111 Rev. Stats. of 1892. The other objection was interposed upon the theory that the execution could not legally have been levied upon the land in Hernando county until the judgment upon which it was issued had been first legally recorded in that county and that there was no proof that this had been done. Without deciding the question whether an execution can legally be levied upon land in another county until the judgment has been recorded there, we are of opinion as will be seen from the discussion of the preceding assignment, that the proof did show that the judgment had been properly recorded in Hernando county before the execution was levied, and this disposes of the second objection to the introduction of the certified copy of the execution.

The sixth and last assignment of error questions the propriety of the ruling upon the motion for a new trial. Under this assignment several propositions are insisted upon which we shall consider in the order presented. It is said that the evidence does not show that Johnson's judgment against Drew was recorded in Hernando county before the levy of the execution under which the sale was made nor before the record of the deed from Drew to Inglis *et al.* We have already disposed of this adversely to the contention of plaintiffs in error, in discussing other assignments of error.

It is said that the evidence does not show that the execution was levied before the record of the deed from Drew to Inglis *et al.,* but it is shown that the judgmnet upon which the execution issued had become a lien upon the land before the deed was recorded, and upon the principles announced in the cases hereinafter cited it was immaterial in such a case whether the execution was actually levied before or after the record of the deed, as in either case the title of the purchaser at the execution sale would be superior to the title acquired by the grantee by virtue of such deed.

It is said that the recitals in the deed from Keathley to McKeown which was recorded in 1884, and the mortgages and deeds from Drew to other parties recorded prior to the record of the judgment against Drew, furnished record notice to Johnson of the equities of Inglis, Broome, Taylor and Keathley. We have already pointed out in the statement the fact that none of these conveyances except that from Keathley to McKeown contained any suggestion that other persons had equities in the property. The mortgage executed by Drew purported to convey an undivided one-fifth interest in the land, but there is no suggestion in the document that Drew did not

own the entire interest, nor that Inglis, Broome, Taylor and Keathley were interested in the property. There was, therefore, nothing in these documents to put Johnson on notice. As to the deed from Keathley to Mc-Keown, neither Drew nor Johnson were parties thereto, nor was it a link in the chain of title of Drew through whom Johnson claims. The recitals therein were recitals in deeds between strangers so far as plaintiff was concerned and he cannot be bound thereby, in the absence of actual notice, merely because the deed was recorded.

It is said that the purchaser at an execution sale takes only the right, title and interest which the execution debtor had subject to equities existing at the time the judgment was recorded, that this principle had been recognized by this court in Holland v. State, 15 Fla. 455, and Massey v. Hubbard, 18 Fla. 688, and that the limitations upon this principle, announced in Carr v. Thomas, 18 Fla. 736, Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516, 11 Am. St. Rep. 334 and Lusk v. Reel, 36 Fla. 418, 18 South. Rep. 582, 51 Am. St. Rep. 32, which are based upon our statute protecting creditors and purchasers for a valuable consideration without notice against unrecorded conveyances, apply only in cases where the judgemnt debtor had the legal title to the property in his own right, and not in cases where, though apparently the holder of the legal title, he yet held it in trust for another. We have carefully considered the decisions referred to and also the decision in Eldridge v. Post, 20 Fla. 579, and Rogers v. Munnerlyn, 36 Fla. 591, 18 South. Rep. 669, but we are unable to see that they thus restrict the rule applicable under the statute referred to. In the case of Lusk v. Reel, supra, it was held that a purchaser at an execution sale against one to whom real estate had been conveyed through mistake, but without any knowledge

actual or constructive of such mistake, was entitled to protection as an innocent purchaser. In that case the execution creditor was the purchaser. In the present case the title to the property in controversy was in Drew, with the knowledge and consent of the other parties interested. The deed conveying the property to him was an absolute conveyance in fee simple containing no intimation whatever that he held the property in trust. The declaration of trust, if executed before, was not recorded until after the record of Johnson's judgment in Hernando county, which fixed his lien upon the property, and the conveyance from Drew to the parties for whom he held the property in trust, was executed and recorded after the record of Johnson's judgment in Hernando county. It is not claimed that the parties were ever in actual possession of the land, nor that Johnson had actual notice of their claims until the day of the sale. The notice given on the day of sale was unavailing, because the rights of the purchaser at the sale, whether such purchaser be the execution creditor of a third person, are fixed by the status existing at the time the lien is acquired, and not by the status existing at the time of the sale. This is clearly held in the decisions above referred to. If at the time the lien is acquired the creditor has no notice actual or constructive of equities of third persons in real estate the title to which stands in the name of the judgment debtor as the apparent absolute owner, the purchaser at the execution sale thereof takes a good title and is protected as a bona fide purchaser, even though the creditor or purchaser had notice of the equities of others at the time of the sale.

Lastly it is said that plaintiff was estopped by his conduct and silence at the time of the sale by which he had

18 S. C.

led Keathley and one Barker who were present at the sale and interested in the property to believe that he acquiesced in the statement made at the sale that Drew only owned a one-fifth interest in the land and that interest only was being sold by the sheriff. There is testimony to show that Keathley protested against the sale and that Johnson was present at the time, but we think the referee was justified in his finding that Johnson did not by his conduct or silence lead any one to believe that only a one-fifth interest was being sold. The execution was levied upon all the right, title and interest of Drew in the entire property and the deed recites that all his interest was sold and purports to convey such interest. The fact that other persons protested against the sale of all but a one-fifth interest even though Johnson said nothing in reply to such protest, cannot in the face of the fact that the entire interest was sold operate as an estoppel upon Johnson as the purchaser, and prevent him from claiming that which was in fact sold and conveyed.

This disposes of all the points presented and finding no error, the judgment will be affirmed.

HOCKER, WHITFIELD and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and TAYLOR and COCKRELL, JJ., being disqualified, took no part in the decision of this case.