THE VAN EEPOEL REAL ESTATE COMPANY, a Corporation, *Appellant*, v. THE SARASOTA MILK COMPANY, a Corporation, et al., *Appellees.*

Division A.

Opinion filed August 1, 1930.

Petition for rehearing denied September 3, 1930.

440

*Jackson, Dupree & Cone,* for Appellant;

*Early & Arnest,* for Appellees.

STRUM, J.—This is a contest for priority between a mortgagee and a mechanic's lien-claimant asserting liens upon the same land.

The mortgage was executed by the owner of the property November 25, 1925. It was recorded April 21, 1926.

The mechanic's lien-claimant dealt directly with and was therefore in privity with the owner. The mechanic's work was commenced on April 12, 1926, and completed on

April 16, 1926. Notice of the mechanic's lien was filed in the office of the clerk of the circuit court on July 7, 1926.

The following statutes are pertinent to the controversy:

"No conveyance, transfer or mortgage or real property, * * * shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law * * * ."
Sec. 5698, C. G. L. 1927.

The statute just above quoted is usually referred to as the recording statute.

The following statutes are found in the Chapter relating to the acquisition and enforcement of mechanic's liens:

"Liens prior in dignity to all others accruing thereafter shall exist in favor of the following persons, upon the following described real estate, under the circumstances hereinafter mentioned, to-wit:"

Then follows provisions affording liens to persons performing labor upon or furnishing materials in the construction or repair of buildings. Secs. 5349, 5350, 5353, C. G. L. 1927.

"As against the owner * * * of the property, real or personal, upon which a lien is claimed, * * * the lien hereinbefore provided for shall be acquired by any person, in privity with such owner, by the performance of the labor or the furnishing of the materials. Any purchaser or creditor whose title, interest, lien or claim in or to the property shall be created, or

shall arise, while the construction or repair of such property as aforesaid is in process, shall be deemed and held to be a purchaser or creditor with notice.

"As against the purchasers and creditors of such owner without notice, such lien shall be acquired upon real estate only from the time of the recordation in the office of the clerk of the circuit court of the county where the real estate lies of a notice of such lien. * * * ." Sec. 5380, C. G. L. 1927.

The chancellor held that the mechanic's lien was superior. That decree was originally reversed by this court. Upon further consideration it appears that the chancellor's ruling was correct, and should be affirmed.

The lien of the mortgagee was not created, nor did it arise, during the progress of the mechanic's work, so as to charge the mortgagee with notice on that account.

The mechanic commenced and completed his work after the execution of the mortgage but before its recordation, without knowledge or notice of the existence of the mortgage. Neither does it appear that the mortgagee had notice, either actual or constructive, of the mechanic's claim when the mortgage was recorded.

The mortgage came into existence and was a valid lien as between the mortgagor and the mortgagee upon its execution and delivery on November 25, 1925, several months prior to the time the mechanic commenced work. It was of no effect, however, as "against creditors or subsequent purchasers" for value and without notice, until recorded, which recording occurred on April 21, 1926. Meanwhile, and while there was no mortgage of record, the mechanic commenced and completed his work, thereby acquiring a statutory lien upon the property as against the owner. Thus the mortgagee and the mechanic each held valid and effective liens upon the property so far

as the interest of the mortgagor-owner was concerned, the lien of the mortgagor dating from November 25, 1925, the date of the delivery of the mortgage, and the statutory lien of the mechanic dating from April 12, 1926, the date of the commencement of the work, so that, as against the owner, the lien of the mortgage was first in point of time. On April 16, 1926, when the mechanic's work was completed, neither the mortgagee nor the mechanic held a lien good as against the other, since neither had recorded his lien in the public records, and neither had actual notice of the other's lien. Up until April 21, 1926, when the mortgage was recorded, and which was five days after the completion of the mechanic's work, the liens of the mortgagee and of the mechanic, as between themselves as creditors' were merely *in posse*. On that date, however, the mortgage was recorded, and thereby became first in time of recording as against the mechanic's lien, notice of which was not recorded until July 7, 1926.

Sec. 5380, C. G. L. 1927, provides that "as against purchasers and creditors of the owner without notice" a mechanic's lien upon real estate shall be "acquired" only from the time of the record in the clerk's office of a notice of such lien. The mechanic acquired a lien as against the owner from the commencement of the work, but at the time the notice of such lien was *recorded* the mortgage had been executed, delivered and previously recorded, and was fully effectual both as against the mortgagor and against creditors and purchasers. In the absence, therefore, of an estoppel operating against the mortgagee under the circumstances stated, the mortgage would constitute a prior lien, being first in time of execution and of recording. See Guaranty Trust Co. v. Thompson, 113 So. R. 117; Annotation, Ann. Cas. 1912A 193. In a contest between persons having only equitable interests, however, priority of time

is the ground of preference last resorted to. If one has on different grounds a better equity than the other, priority of time is usually subordinated to other equitable considerations. Myers v. Van Buskirk, 119 So. R. 123.

Subsequent purchasers or creditors for value and without notice of a prior unrecorded deed or mortgage to a third person are not affected thereby. Stewart v. Mathews, 19 Fla. 752, Feinberg v. Stearns, 56 Fla. 279, 48 So. R. 36; West Coast Lbr. Co. v. Griffin, 56 Fla. 878, 48 So. R. 36; Hopkins v. O'Brien, 57 Fla. 444, 49 So. R. 936; Myers v. Van Buskirk, 119 So. R. 123; Rambo v. Dickenson, 110 So. R. 352; Edwards v. Thom, 25 Fla. 222, 5 So. R. 707; Lusk v. Reel, 36 Fla. 418, 18 So. R. 581; Doyle v. Wade, 23 Fla. 90, 1 So. R. 516. See also Spellman v. Beeman, 70 Fla. 575, 70 So. R. 589. When one purchases for value and without notice of a prior unrecorded deed the rights acquired under the junior deed are superior to those held under the senior deed, even though the senior deed be recorded prior to the record of the junior deed. The senior grantee having failed to record his deed, thereby permitting the junior grantee to purchase without notice of the senior deed, is estopped to claim priority over such junior grantee under those circumstances. Accordingly, it is generally held in states having recording statutes similar to ours, that if A conveys lands to B, a *bona fide* purchaser for value, who does not go into possession and who failed to record his deed until after A conveys the same land to C, a second *bona fide* purchaser for value without notice of B's interest, and B then records his deed before C records his, the title of C shall nevertheless prevail as between C and B, because it is the fault of B that he did not immediately record his deed, thereby permitting C to deal with the property and part with his consideration without knowledge of B's interest. So B is estopped and the equities are with C. Fallas v. Pierce, 30 Wis. 443, 458; Randall v. Hamilton, 119 So. E. R. 595, 32

A. L. R. 342; see also Ann. Cas. 1912 A, 194; Ann. Cas. 1916 B, 632.

In Mansfield v. Johnson, 51 Fla. 239, 40 So. R. 196, it was held: "If at the time a lien is acquired by a judgment creditor he has no notice actual or constructive of equities of third persons in real estate the title to which stands in the name of the judgment debtor as the apparent absolute owner, the purchaser at the execution sale, whether such purchaser be the judgment creditor or another, takes a good title and is protected as a *bona fide* purchaser, even though the creditor or purchaser had notice of such equities at the time of the sale." In that case the true owner of a part interest was held estopped to assert his title as against the judgment creditor because of his failure to record the evidence of his title. See also Doyle v. Wade, 23 Fla. 90, 1 So. R. 516.

Miller v. Berry, 78 Fla. 98, 82 So. R. 764, is not in conflict with Mansfield v. Johnson, *supra,* since in Miller v. Berry it affirmatively appeared that the judgment creditor, contrary to the situation in Mansfield v. Johnson, did not extend credit or acquire his rights on the strength of the record showing title to be in the judgment debtor, so that in Miller v. Berry the true owner was held not estopped to assert his title against the judgment creditor. In Rogers v. Munnerlyn, 36 Fla. 591, 18 So. R. 699, it was held that a creditor who obtains judgment or sues out an attachment after the record of a valid mortgage is not entitled to protection under the statute as an innocent purchaser, although the debt upon which the judgment or attachment is based was contracted after the execution of the mortgage and before its record. In that case, however, it appears that the creditor in question was a creditor at large, and therefore not within the protection of the recording statute (see Southern Bank & Trust Co. v. Mathers, 90 Fla. 542, 106 So. R. 402), until his attachment was levied, thereby afford-

ing him a lien, which levy occurred *after* the record of the mortgage therein held to be superior to the attachment lien. The right of priority of the attaching creditor was held to date from the levy of his attachment, prior to which time he was merely a creditor at large.

The following principle, enunciated in Hunter v. State Bank, 65 Fla. 202, 61 So. R. 497, is applicable to the case now before us: ''The registry statute does not operate to convey title.or to create a lien upon property; but records made under such statute may operate as an estoppel where persons without actual knowledge and without circumstances to put them upon inquiry reasonably may have taken substantial steps relying upon the record; and those who by their conduct or neglect in permitting the record to mislead others must bear any consequent loss rather than the one who in good faith may have acted with reference to the record as being in accord with actual facts.''

The mechanic here is in the status of the junior grantee in the illustrations hereinabove mentioned. When the mortgage was recorded, the mechanic was not a creditor at large of the owner, as was the creditor in Rogers v. Munnerlyn, *supra*. By performing the work in privity with the owner this mechanic acquired a specific lien, good as against the owner, and therefore was within the class of creditors contemplated by the recording statute. His status as a creditor was the same as that of a mortgagee holding an unrecorded mortgage. The mechanic dealt with the property and acquired his lien as against the owner prior to the recording of the mortgage, and without notice of the existence of the mortgage. The mechanic's lien, like the title of the junior grantee above mentioned, was good as against the owner, but subject to postponement in favor of the rights of subsequent innocent purchasers or creditors, against which rights he could protect his lien by recording notice thereof or by some other effective form of notice. Like

the junior grantee above, the mechanic by failing to prompt-
ly record notice of his lien, incurred the hazard of having
his rights postponed in favor of an innocent purchaser or
creditor who may have subsequently dealt with the prop-
erty without notice of the mechanic's rights. See Peoples
Bank v. Virginia Bridge Co., 113 So. R. 680, 685. But as
to one who had previously dealt with the property and who
had already changed his position with reference thereto but
who had failed to record notice of his interest, as was the
case with the senior grantee in the above illustrations, there-
by permitting the mechanic, like the junior grantee, to
acquire an interest without notice of the senior interest, the
principles of estoppel must be considered in settling the
priorities of these two conflicting interests.

If after the mechanic had completed his work but before
he had filed notice of his lien, an innocent purchaser had
acquired a valid conveyance of the property, such latter
purchaser would prevail over the mechanic's lien because
the mechanic, by failing to record his notice of lien, as-
sumes the hazard of the intervening rights of those who
deal with the property in ignorance of the mechanic's un-
recorded claim. It being the duty of the mechanic to
record his notice of lien if he would protect his priority,
having failed to do so he would be postponed to the rights
of one who was mislead into purchasing the property in
reliance upon the record as the mechanic elected to leave
it. Such a case is Axtel v. Smedley, 59 Fla. 430, 52 So. R.
710. See also Smith v. Gaudy, 43 Fla. 142, 30 So. R. 683.
In the Axtel case, the materialman, dealing directly with
the owner, completed the furnishing of his materials, but
recorded no notice of his lien for nearly three months.
Meanwhile, Axtel, an innocent purchaser, purchased and
received a conveyance of the premises, which he recorded.
Axtel dealt with the property and changed his position in

reliance upon the record as the materialman elected to leave it, and having thus acquired his title, he prevailed over the materialman. In the case now before us, however, the mortgagee has not changed his position to his prejudice in ignorance of the mechanic's claim and through the fault of the mechanic. The mortgagee acted in acquiring its mortgage lien long prior to the origin of the mechanic's claim and elected to place of record no notice thereof to those who might subsequently deal with the property, thus permitting the mechanic to thereafter change his position by performing his work in ignorance of the mortgage, and under such circumstances, so far as the record disclosed, as would afford the mechanic a first lien upon the property under the statutes. Even if it could be said that the mechanic was remiss in not recording his notice of lien, that fact did not mislead the mortgagee to his prejudice. It merely subjected the mechanic to the risk of being subordinated to the rights of those dealing with the property without notice of the mechanic's claim. On the other hand, the failure of the mortgagee to record its prior mortgage *did* permit the mechanic to deal with the property without the knowledge of the mortgage or of circumstances to put the mechanic on inquiry.

When the mechanic thus changed his position with reference to the property there was nothing of record to indicate that his lien would be subordinate to a prior mortgage, nor did he have actual knowledge of the mortgage. When the mechanic performed his work, he acquired a valid lien as against the owner. The mortgagee, by failing to record its mortgage, permitted the record of the title to indicate a situation not in accordance with the facts. By withholding its mortgage from record and permitting the mechanic to bestow his labor upon the property in reliance upon the title as it appeared upon the record, the mortgagee, like

the grantee in the senior unrecorded conveyance herein-above referred to, and like the true owner of the property in Mansfield v. Johnson, *supra*, is estopped to claim priority over the mechanic's lien, the conflicting priorities being occasioned solely by the voluntary omission of the mortgagee to record its mortgage. Elizabethport Cordage Co. v. Whitlock, 37 Fla. 190, 20 So. R. 255; Root v. Bryant, 57 Calif. 48; 40 C. J. 300; 41 C. J. 570; 21 C. J. 1166, 1172. Under an early statute, the courts of Minnesota took a contrary view, on the theory that mechanics' liens were not within the protection of their recording statute. Oliver v. Peterson, 25 N. W. R. 629; Miller v. Stoddard, 52 N. W. R. 895; Noremberg v. Johnson, 52 N. W. R. 1069. See also Gately v. Gately, 169 N. Y. S. 280.

Of course, some time may necessarily elapse between the execution and filing of a mortgage. See Karst v. Gane, 32 N. E. R. 1073. But a mortgagee must act with diligence, and avoidable delays are at his peril. Here the elapsed time between the execution and filing of the mortgage is nearly five months, which is unreasonable.

The view herein adopted does not give any retroactive effect to the act or recording the notice of the mechanic's lien. See Axtel v. Smedley, *supra*. It is not held that the notice of lien recorded on July 7, 1926, relates back to the commencement of the work, nor would it have any effect upon intervening rights of purchasers or creditors without notice acquired after the completion of the work and before the record of the notice. The mortgage here in question is admittedly prior in time of both delivery and recording, but the mortgagee by its omission to record its mortgage has estopped itself to assert priority over a junior creditor, entitled to the protection of the recording statutes, who has changed his position and dealt with the property in reliance upon the title as it existed of record by the

voluntary omission of the mortgagee to record its mortgage. Under the circumstances, it would be inequitable to afford the unrecorded mortgage priority over the mechanic, even though the mechanic, prior to recording his notice, would have no standing or priority as a lienor as against other creditors not affected by an estoppel.

If the mechanic had recorded no notice of his lien within three months from the completion of the work (See Sec. 5380, Comp. Gen. Laws, 1927), a different question might be presented. That aspect of the matter is not now considered.

The situation here presented differs essentially from that in Parker v. Gamble, 96 Fla. 343, 118 So. R. 21, involving priorities between a mortgage and a materialman's lien upon an estate by the entireties. Under the controlling statute in that case no lien whatever accrues or comes into existence for any purpose, against the owner of other persons, until the filing of the required notice of lien. Unlike the situation now before us, when an estate by entireties is involved materialmen have no status as lienors for any purpose, even as against the owners, until the requisite notice is filed, and consequently have no standing whatever in determining priorities. Until the notice is filed they are merely creditors at large and not entitled to the protection of the recording statutes. Moreover, it does not appear in Parker v. Gamble that the mortgage was executed and delivered before work commenced, but withheld from the record until after the materials were furnished, as is the case here.

The mortgage here involved is a purchase money mortgage. The views herein expressed, affording the mechanic's lien priority, do not conflict with the general rule that a purchase money mortgage, made simultaneously with the conveyance to the mortgagor, takes precedence over any

lien arising through the mortgagor, though the latter be prior in point of time. See Jones on Liens (3rd Ed.), Sec. 1458; 19 R. C. L. 416; also Strong v. Van Duersen, 23 N. J. Eq. 369; Middletown Savings Bank v. Fellowes, 42 Conn. 36; Thorpe Bros. v. Durbom, 45 Iowa 192; McIntosh v. Thurston, 25 N. J. Eq. 242; National Bank v. Sprague, 20 N. J. Eq. 13; Ettridge v. Bassett, 136 Mass. 314; Guy v. Garriere, 5 Calif. 511; Warren Mtge. Co. v. Winters, 146 Pac. R. 1012; Ann. Cas. 1916 C, 956.

Examination of the cases just cited discloses that the rule last above stated, holding the purchase money mortgage superior to the mechanic's lien, is applied in cases where the mechanic's lien is acquired for work done at the instance of the purchaser, and without the acquiescence of the vendor, *prior* to the execution of the mortgage. Thus, when A, the owner, enters into an executory contract to convey to B, and during the pendency of the contract and before a conveyance is executed, work is done upon the premises by a mechanic under a contract with B, the vendee, and without the knowledge or acquiescence of A for which work the mechanic acquires a perfected lien, after which A executes a conveyance to B and simultaneously takes back a purchase money mortgage, the mortgage is superior to the mechanic's lien, because B takes the title charged with the incumbrance of the purchase money mortgage. A's vendor's lien is merged into the purchase money mortgage, being merely an exchange of one form of security for another, and as the mechanic's lien could attach only to B's interest, which was acquired subject to the mortgage, and which is subordinate to A's vendor's lien and consequently to a purchase money mortgage substituted for that lien, the mortgage is superior to the mechanic's lien. This rule is consistent with our own holding as to the superiority of a purchase money mortgage over the dower interest of a

wife of the grantee-mortgagor (McMahon v. Russell, 17
Fla. 698; Taylor v. Mathews, 53 Fla. 776, 44 So. R. 146),
and over the lien of judgments against the grantee-mort-
gagor existing at the time of the conveyance to him (see
Cheeves v. First National Bank, 79 Fla. 34, 83 So. R. 870),
and over a claim of homestead exemption to the property
conveyed. Porter v. Teate, 17 Fla. 813. See also Jones on
Mortgages (4th Ed.) 464; (6th Ed.) 468. Where the vendor
has knowledge of the work being done by the mechanic, and
acquiesces therein, the rule may be otherwise. See Jones
on Liens (3rd Ed.), Sec. 1487; Bohn Mfg. Co. v. Kountze,
46 N. W. R. 1123; 12 L. R. A. 33.

But the situation here presented differs essentially from
any of those just above mentioned. Here the conveyance
and purchase money mortgage had both been executed,
and that transaction was at an end, before the mechanic
commenced his work. No mechanic's lien existed when
the mortgage was executed and delivered. Thereafter
however, and while the mortgage was withheld from record
by the mortgagee, the mechanic's lien arose by virtue of
work done for the new owner, the mortgagor, *after* the
execution and delivery of the purchase money mortgage.
It is as much the duty of a purchase money mortgagee, as
of any other mortgagee, to promptly record his mortgage
if he would preserve his priority over the rights of inno-
cent purchasers or creditors subsequently arising, and
where a purchase money mortgagee elects to withhold his
mortgage from record and to permit others to innocently
deal with the property in ignorance of his unrecorded
mortgage, the same rules of estoppel are applicable to him
as to any other mortgagee. Western Tire Co. v. Campbell,
169 S. W. R. 253; Ann. Cas. 1916C, 943, 953; 41 C. J.
528, 571.

An opinion prepared for filing herein on re-hearing, in
which the former order of reversal is adhered to, is postu-

lated upon the theory that although the mortgage was signed by Sarasota Milk Company, the mortgagor, on November 25, 1925, the seal of said mortgagor was not affixed thereto until after the mechanic's work was commenced, and probably not until April 21, 1926, the date upon which the mortgage was recorded, so that the mortgage did not actually come into existence until after the mechanic's work was commenced.

That premise is grounded upon the testimony of Mr. Van Eepoel, an officer of the *mortgagee,* not of the mortgagor, who testified in substance that on November 25, 1925, the mortgage in question was left with an attorney to be recorded as soon as the sale was completed and closed, because the mortgagor, the Sarasota Milk Company, had not yet received its seal "and they were to put this seal on the instrument, and then have it recorded, and it was some little time before they got their seal." The witness further testified, immediately thereafter, that he "did not know when they put the seal on there of Sarasota Milk Company, * * * just when they put their seal on there I do not know." Therefore, a finding that the seal was not placed upon the mortgage until April 21, 1926, would rest upon nothing more substantial than conjecture. There is nothing in that testimony to establish the affixing of the seal at any definite time. From November 25, 1925, to April 21, 1926, practically five months, would be an unreasonably long period of time to wait for a corporate seal which ordinarily can be procured within from one week to ten days.

On the other hand, the mortgage itself, which is in evidence, recites "that it was executed (not merely signed) this 25th day of November, 1925, by the Sarasota Milk Company," the mortgagor. Execution of the mortgage was acknowledged by the President of the mortgagor be-

fore a notary public, who is also a member of the Bar of this Court, on "this 25th day of November, A. D. 1925." The notary's certificate recites that W. K. Kuhns, President of the mortgagor, on the 25th day of November, 1925, acknowledged that the "executed" said instrument as the free act and deed of the mortgagor, and "that the seal, affixed to said instrument is its corporate seal and that he executed said instrument *'and affixed the corporate seal'* (Italics supplied) by authorization of the directors of said corporation." All of that is certified by the notary to have been acknowledged before him as done on November 25, 1925.

The testimony of Mr. Van Eepoel above referred to, though no doubt given in the best of faith, is not enough to overcome the force of the notary's official certificate that the mortgagor on November 25, 1925, acknowledged the execution of the instrument and that the seal was then affixed thereto. There being no fraud or duress, a notary's certificate of acknowledgment in the form prescribed by law, when the notary has acted within his jurisdiction, is conclusive of the facts and acts recited, and can not be questioned collaterally. Even where fraud is alleged—and none is alleged in this case—proof thereof must be of the clearest, strongest and most convincing character. Bank of Jennings v. Jennings, 71 Fla. 145, 71 So. R. 31; Hutchinson v. Stone, 79 Fla. 157, 84 So. R. 151; Green v. First National Bank, 85 Fla. 51, 95 So. R. 231; Hall v. Foreman, 94 Fla. 682, 114 So. R. 560.

Moreover, there being no palpable violation of a constitutional or statutory command which would constitute a fundamental error in the decree appealed from (see F. E. C. Ry. v. Eno. 128 So. R. 622), the case should be determined here upon the theory presented by the pleadings and upon which it was decided below. New issues of fact

should not .be made here. The bill alleges that the notes secured by the mortgage "were dated November 25, 1925," and that the mortgagor, Sarasota Milk Company, "on the date aforesaid, also 'executed and delivered' to the Tampa Stock Farms Company" the mortgage in question. That allegation appears in paragraph 3 of the bill, and it is admitted as true by the answer of Armstrong Cork & Insulation Company, the mechanic hereinabove referred to. The briefs and arguments are also based·upon that theory.

Even if Mr. Van Eepoel is correct in his statement that the seal was not actually affixed to the mortgage on November 25, 1925, it is clear that the parties to the judgment intended that the act of affixing the seal, when performed, should relate back to November 25, 1925, the date of the mortgage. If those be the true facts, then the parties to the mortgage are charged with the consequences of voluntarily conducting the mortgage transaction in that manner. The consideration for the mortgage certainly passed on November 25, 1925, and the security was *then* determined upon and executed as of that date. An equitable mortgage unquestionably existed between the parties. The parties fixed their rights of that date. The situation is unlike one wherein a creditor subsequently, and in a new and separate transaction, takes security for a pre-existing debt, acting upon the faith of the record title as he finds it as of the date the security is taken. In that event, it may be, though it is not so decided, that such a creditor might prevail over an intervening latent lien, not of record.

Upon further consideration on rehearing, the court recedes from its opinion heretofore expressed herein (120 So. R. 841). The former judgment of reversal is vacated, and the decree appealed from is hereby affirmed.

TERRELL, C. J., AND BROWN AND BUFORD, J. J., concur.

ELLIS, J., dissents.