W. R. CHEVES AND BAMAH P. CHEVES, HIS WIFE, W. T.
CHEVES AND MARY L. CHEVES, HIS WIFE, AND J. C. AD-
KINS, *Appellants,* v. THE FIRST NATIONAL BANK OF
GAINESVILLE, *Appellee.*

## Opinion Filed January 23, 1920.

1.. When a renewal note is given for the purchase price of land
such renewal note does not change the character of the orig-
inal debt. The renewal note is neither a payment of the old
nor the creation of a new indebtedness unless the parties
have expressly agreed to that effect.

2. A judgment is not a lien upon land to which the judgment
debtor has no legal title.

3. A mortgage upon land for the purchase price of it executed
at the same time that the deed therefor is executed so that
they form one transaction, constitutes a superior lien upon
the land to that of judgments obtained prior to the execution
of the deed.

4. A mortgage upon land given by the purchaser of it to secure
the payment of the purchase money, simultaneously with the
conveyance to him, does not necessarily lose its character
as a purchase money mortgage merely because it is taken
in the name of a third person at the vendor's request.

An Appeal from the Circuit Court for Alachua County.
J. T. Wills, Judge.

Decree affirmed.

*Thomas W. Fielding,* for Appellants;

*Hampton & Hampton,* for Appellee.

ELLIS, J.—This is an appeal from an order overruling a demurrer to a bill to enforce a mortgage lien.

The bill in substance alleges that Leila I. Brooks and her husband, J. B. Brooks, on the 19th day of September, 1912, were indebted to the First National Bank of Gainesville in the sum of $3,200.00 for which they executed and delievered to the bank their promissory note payable in ninety days, and executed a mortgage upon a certain lot in Gainesville to secure the payment of the note. That on the 10th day of December, 1912, the bank, acting for Leila I. Brooks and her husband, sold the mortgage property to W. R. and W. T. Cheves for the sum of $2,000.00, and Leila I. Brooks and husband executed a deed therefor to W. R. and W. T. Cheves; that they did not pay cash for the property, but on December 12, 1912, entered into an escrow agreement with the bank whereby the deed from Brooks to Cheves was to be held by the bank, together with two promissory notes for $1,000.00 each, of W. R. and W. T. Cheves—the deed to be delivered by the bank when the notes were paid. The escrow agreement was in the following language:

"ESCROW AGREEMENT.

State of Florida,

Alachua County.

"It is agreed by and between the First National Bank of Gainesville, a corporation under the laws of the United States, on the one part, and W. R. Cheves and W. T. Cheves, partners, trading in Alachua County, Florida, under the firm name and style of Cheves Brothers, on the other part, WITNESSETH: That, Whereas the First National Bank holds a mortgage covering a certain lot, piece, tract or parcel of land, situated, lying and being

in the City of Gainesville, Alachua County, Florida, owned by Inez Brooks and J. B. Brooks, her husband, and a mortgage covering all of the property of the Gainesville Bottling Works, a corporation; and WHEREAS, the said L. Inez Brooks and husband have this date made and executed to the said Cheves Brothers a Warranty Deed covering the said real estate and the said Gainesville Bottling Works has executed to the said Cheves Brothers a Bill of Sale covering the said property owned by it, but have not delivered the said Deed or the said Bill of Sale; it is therefore agreed, that the said Deed and Bill of Sale shall be held by the said Bank until the payment of a certain indebtedness due by the said Cheves Brothers to the said Bank, as evidence by two certain promissory notes for One Thousand Dollars cash and payable one and two years from date hereof, with 8 per cent. interest, payable semi-annually. It is further agreed that in the event the said notes, or the said interest, or any part of said notes or interest, is not paid at maturity, then in that event, the said Bank shall have the right to proceed to enforce its right under the said mortgages now held against said property, and this agreement shall become null and void. It is further agreed, that if at any time said notes are paid, either before or at maturity, then the said deed and Bill of Sale are to be delivered to the said Cheves Brothers or their heirs or assigns.

"At Gainesville, Florida, this the 12th day of December, A. D. 1912.

THE FIRST NATIONAL BANK,
OF GAINESVILLE,

By LEE GRAHAM, Cashier.
W. R. CHEVES,
W. T. CHEVES."

This agreement was copied in the bill and a copy attached and made a part of it. The bill alleges that one of the notes was paid and there was a renewal of the second note on November 6, 1917; that W. R. and W. T. Cheves being on that date indebted to the bank for the balance of the purchase price of the land executed their note to the bank for $1,335.00, "one thousand dollars of which and the interest thereon from the 12th of December, 1912, being for the purchase money of the said property which had been conveyed to them on the said 10th day of December, 1912, by the said Leila I. Brooks and J. B. Brooks, her husband, at the instance and for the benefit of the First National Bank of Gainesville." On the same day W. R. and W. T. Cheves, joined by their wives, executed a mortgage upon the property to "secure the said purchase money note." On the 22nd day of November, 1917, the deed from Brooks and wife to W. R. and W. T. Cheves was delivered and filed for record and simultaneously with such delivery the mortgage to the bank dully acknowledged was filed for record. It is alleged that at the time of the delivery of the deed to W. R. and W. T. Cheves and the filing of the mortgage for record executed by them, there existed against W. R. and W. T. Cheves several judgments aggregating about seven hundred and thirty-seven dollars. It is alleged that the bank had no knowledge of the existence of these judgments; that the judgments were obtained after the mortgage from Leila I. Brooks and her husband to the bank had been recorded. The bill shows that there were seven judgments obtained, the first in March, 1916, the last in April, 1917, that executions were issued upon the judgments and the property covered by the mortgage sold to J. C. Adkins who now claims title under the sheriff's

deed dated February 4, 1918. It is alleged that Adkins was the attorney of record for the judgment creditors, had actual and constructive notice of the execution of the "said mortgage and of said indebtedness," and was not an innocent purchaser for value; that he paid no money for the property, but really represented the judgment creditors. The prayer is for a foreclosure of the mortgage from W. R. and W. T. Cheves to the bank after an account had been taken of the amount due under the mortgage and the failure or refusal of W. R. and W. T. Cheves to pay.

A demurrer to the bill was interposed by J. C. Adkins upon thirteen grounds. Those argued are that the bill does not show that he had any notice of the existence of the escrow agreement; nor that the judgment creditors had notice of such agreement, nor that they had notice of the mortgage from W. R. and W. T. Cheves to the bank; that the bank was not the vendor of the property and so has no lien for the purchase price; that the bill shows no right or lien or interest in the bank under the mortgage from Brooks; that the bill shows the notes for $1,000.00 each made by W. R. and W. T. Cheves have been paid, and that the alleged escrow agreement was performed and carried out; that the allegations of the bill are contradictory; that the bill is defective because Leila I. Brooks and husband are necessary parties and are not made parties defendant to the bill of complaint; that the bill is multifarious and without equity.

This demurrer was overruled, and the defendants appealed.

The bill of complaint is based upon the right to enforce the mortgage lien against W. R. and W. T. Cheves in favor of the bank for the purchase price of the land.

It is true that Leila I. Brooks and husband were the vendors of the land and the obligation which existed for the purchase price was due them primarily, but according to the allegations of the bill they permitted the bank to act in the transaction for them, and permitted the bank to take the notes and mortgage from W. R. and W. T. Cheves for the purcahse price. This was no concern of the appellants. The transaction would have been in nowise different so far as the legal result is concerned, if W. R. and W. T. Cheves had made the notes payable to Leila I. Brooks and husband and the mortgage given to them to secure the payment of the purchase price, and afterwards they had transferred the notes to the bank on account of their indebtedness to it. So that according to the allegations of the bill, the bank stands in the place of Leila I. Brooks and her husband and occupies the same relation to W. R. and W. T. Cheves and J. C. Adkins as Leila I. Brooks and her husband would have occupied if the notes for the purchase price of the land and the mortgage given to secure the same were held by them, or that having originally been held by them they had assigned them to the bank.

The note for $1,335.00 made by W. R. Cheves and W. T. Cheves to the bank on November 6, 1917, and to secure which the mortgage was given was a mere renewal of one of the purchase money notes with interest. This renewal note did not change the character of the original debt as one for the purchase money of the land. The execution of a note in renewal of a previous one is not a payment of such prior note, nor the creation of a new indebtedness unless there is an express agreement to that effect by the parties. See Griffin v. Long, 96 Ark. 268,

131 S. W. Rep. 672; Lowry v. Fisher, 2 Bush. (Ky.) 70; Wallowa Nat. Bank v. Riley, 29 Ore. 289, 45 Pac. Rep. 766.

We are not concerned with the debt of Leila I. Brooks and husband to the bank. It is only important that they consented to the execution of the deed to W. R. and W. T. Cheves and the payment of the price demanded for the land to the bank. Now the socalled agreement in escrow, was nothing more than an agreement between the purchaser and vendor, or one who stood in place of the vendor, that there should be no delivery of the deed until the payment of the purchase price, that is to say the deed should not be executed until the money was paid. We can conceive of no possible legal objection to W. R. and W. T. Cheves making that kind of an agreement. The prudence of it might be open to some doubt if the transaction had been larger. and the vendor, or one in his place, irresponsible; but the bank in this case possibly had earned the confidence of the vendees and the transaction was small. The terms of this agreement seem later to have been altered by the mutual will and desire of the parties thereto. As no one else was concerned and had no legal right to complain, and the change was not for an unlawful purpose, it was validly effected. Gunby v. Drew, 45 Fla. 350, 34 South. Rep. 305. It amounted to this: While W. R. and W. T. Cheves were not to get a deed to the place until all the purchase price was paid, the deed should be delivered at once if a mortgage to secure the balance of the purchase price remaining unpaid should be given. As there was no possible legal objection to this agreement it was entered into. It did not affect the rights of the creditors. Their judgments were not liens upon the land before W. R. and W.

T. Cheves acquired a deed, because the latter had no legal title, only an equitable interest which could be reached only in equity. The contention that the note for $1,335.00 was not for the remainder of the purchase price of the land cannot be sustained. The delivery of the deed was within the bank's power, it had been given this authority by the vendors, it required payment of the purchase price before delivery; later it yielded to the extent of agreeing that the deed should be deliverd upon a mortgage being given upon the land to secure payment of part of the purchase price.

That a mortgage for the purchase price of land executed at the same time that the deed therefor is executed so that they form one transaction constitutes a superior lien to that of judgments obtained against the vendee prior thereto is generally conceded, and, of course, the superiority of the lien is not lost by diligence in procuring an early record of the mortgage. See 1 Jones on Mortgages, 469; Marin v. Knox, 117 Minn. 428, 136 N. W. Rep. 15. A mortgage to secure the purchase money given by a purchaser of land simultaneously with the conveyance of the land to him, does not necessarily lose the character of a purchase money mortgage merely because taken in the name of a person other than the vendor by the vendor's procurement. See Albright v. Lafayette Building & Savings Ass'n, 102 Pa. St. 411; Cowardin v. Anderson, 78 Va. 88; Carey v. Boyle, 53 Wis. 574, 11 N. W. Rep. 47; Van Loben Sels v. Bunnell, 120 Cal. 680, 53 Pac. Rep. 266; Protestant Episcopal Church of the Diocese of Ga. v. E. E. Lowe Co., 131 Ga. 666, 63 S. E. Rep. 136.

What has been said disposes of the case, and it is therefore unnecessary to discuss other assignments of

error or questions that were urged in the brief. The bill of complaint, the material allegations of which being admitted by the demurrer, merely stated a case in which the bank stood in place of the vendor of the land and held the security for the payment of its purchase price.

The decree of the chancellor should therefore be and is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.