BOARD OF PUBLIC INSTRUCTION FOR BAY COUNTY, a Corporation, *et al.*, Plaintiff in Error, v. STATE *ex rel.* W. J. BAREFOOT and JULIA LEE COOEY, Defendants in Error.

199 So. 760
En Banc
Opinion Filed January 17, 1941

*A. M. Douglas,* for Plaintiff in Error;

*Clyde R. Brown* and *James N. Daniel,* for Defendants in Error.

Thomas, J.—This case reaches us on writ of error from the premptory writ of mandamus issued by the circuit judge after the answers of the various respondents had been stricken and not thereafter amended.

From the initial pleading it appears that one of the relators on different occasions prior to November 6, 1934, lent to the board of public instruction for the exclusive use of the free public schools sums of money which aggregated $14,000. As the loans were made he accepted promissory notes, which were renewed from time to time and about March 1, 1937, the debtor executed to him a promissory note for the sum of the various loans, and an additional note for accrued interest. This payee recovered a judgment on both notes in the year 1939, which was not satisfied.

The other relator in the year 1933 advanced money to the board of public instruction for the same purpose, and received from the debtor as evidence of the obligation a promissory note payable one year after date. In the year 1939 she also recovered a judgment against the maker, which likewise has not been paid. Upon making demand for payment of the judgment, the creditors were informed that no money was on hand for the satisfaction of these

claims and that none would be available for the following "two or three years." The creditors were advised by the board that funds received from taxes levied under Section 8, of Article XII, of the Constitution, were not sufficient both to pay the indebtedness and to continue the operation of the public school system of the county.

It was set out in the petition for mandamus that a levy of ten mills authorized by the above section of the Constitution would be made for the scholastic year beginning July 1, 1940, but that no tax was to be imposed on the homesteads in the county "up to the assessed valuation of $5,000" as defined in Article X of the Constitution of the State of Florida, and that no collection by the judgment creditors on the amounts due them was feasible unless a levy were made on the property exempt under the amendment of the Constitution adopted at the general election in 1934.

Thus, there is presented the question whether the homesteads otherwise exempt under the amendment adopted in 1934 may escape taxation for the payment of the obligations incurred by the board of public instruction prior to that time, although a consolidated note was given subsequently.

The difference in the claims of the two realtors should be iterated. One of them is represented by a promissory note executed after November 6, 1934, in exchange for ones made before that date; the other is evidenced by a promissory note made before the adoption of the amendment and not renewed. Both were reduced to judgment after the amendment was approved by the people.

"According to the great weight of authority, a renewal note does not operate to discharge the note in renewal of which it is given unless there is an agreement that it shall have that effect." 8 Am. Jur., Bills and Notes, Pg. 446. This statement of the law on the subject seems in harmony

with the utterance of this Court in Cheves, *et al*, v. First Natl. Bank of Gainesville, 79 Fla. 34, 83 So. 870, that "The execution of a note in renewal of a previous one is not a payment of such prior note, nor the creation of a new indebtedness, unless there is an express agreement to that effect by the parties." See Our Home Life Ins. Co. v. Peacock, 71 Fla. 35, 70 So. 775; Frank, *et al.*, v. Williams, 36 Fla. 136, 18 So. 351. Upon this authority we think that the note of the one relator accepted after the effective date of the amendment to the Constitution freeing homesteads up to a certain value from taxation may be placed in the same category as the note of the other relator given before that time, and that we may therefore proceed to the determination of the real matter in controversy, namely, whether the contracts between the board of public instruction and these creditors will be impaired or hampered in their quest for relief by exemption of the homesteads from a tax to discharge the judgments.

An examination of the statute, Section 566, of the Compiled General Laws of Florida, 1927, and the part of the Constitution to which we have referred in giving the facts as they were set out in the petition for mandamus, discloses immediately the limitations upon the board, both in the borrowing of money and in the levy of taxes for school purposes. It is important to bear these limitations in mind in discussing the effect upon the original contracts of the adoption of the amendments in 1934. It is well settled that a provision of even the organic law of the State may not be given such effect that it will impair an obligation existent at the time of its adoption. Section 10, of Article I, of the Constitution of the United States is that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ." After quoting this provision in the case of Folks v. County of Marion, 121 Fla. 17,

163 So. 298, Mr. Justice BROWN, speaking for this Court, observed that the Supreme Court of the United States had ". . . held that a State Constitutional provision is a law within the meaning of this inhibitory clause of the Federal Constitution, and that "a State can no more impair the obligation of a contract by her organic laws than by Legislative enactment.'"

Obviously, when the original obligations were incurred by the board of public instruction there was no discrimination between homesteads and any other class of taxable property so far as the levy of taxes for the payment of those obligations was concerned, and when the contractual relationship between the relators and the board of public instruction was created, those who advanced the money for the use of the school system of the county, did so with the understanding that all taxable property in the county, including homesteads, could be resorted to to discharge the debts.

A decision of the Supreme Court of the United States, State of Louisiana *ex rel.* Josiah Fisk v. Police Jury of Jefferson, Left Bank, 116 U. S. 131, 29 Law Ed. 587, seems pertinent. A lawyer had rendered services as a district attorney and had secured judgments for the amounts due him. By a subsequent provision of the State Constitution a limitation was placed upon the amount which could be raised by taxation, and an effort was made to defeat the collection of his claim because of that provision of the organic law. It was decided that to visit the prohibitions of the Constitution subsequently adopted on the contract for services previously performed would be the impairment of a contract, and the judgment creditor was held entitled to a writ of mandamus to compel the collection of a tax to pay the amount due him.

There is ample authority for the position of the one

relator that the acceptance by him of subsequent renewal notes was but a continuation of the original debt, there being nothing whatever in the record to indicate that the later notes were intended to be novative. There is no doubt that the notes themselves were contracts, and the provisions of the constitutional amendment limiting the collection of taxes upon homesteads up to a certain value would in our opinion clearly become an impairment of the original contracts if applied to the indebtedness we have described.

We cannot agree with the appellants that the realtors will be confined to any rights they had at the time of the entry of the judgment as distinguished from the time when the notes were made. They insist that this is true because only a judgment could set at rest the claims and the defenses of the parties litigant. This view is fallacious, and if it were adopted, it would mean that any one lending money would not be sure of his rights or remedies until the maturity of the debt, regardless of the distance in the future, because until the debt matured there could be no suit brought upon it. There seems little need to elaborate on this contention.

It is our conclusion that the note sued upon by one of the relators was merely a renewal and consolidation of the original obligations and bore none of the characteristics of a novation; that it was therefore in the same category as the note of the other relator which had not been renewed; that the rights of the relators at the time of the original obligations are the ones which they may now enforce; that their contracts would be impaired by the effectuation of the amendment to the Constitution; that they are entitled to mandamus to enforce the collection of a tax to pay the indebtedness due them; and that the circuit judge was eminently correct in issuing the peremptory writ of mandamus to bring to the judgment creditors the remedy upon

which they were entitled to rely when the original obligations were incurred.

Affirmed.

TERRELL, C. J., BUFORD and ADAMS, J. J., concur.

PER CURIAM.—The Court, *ex mero motu,* recalled the mandate in the above case because it did not appear that the opinion heretofore filed, involved the construction of a part of the Constitution, was considered by the whole Court. The opinion has now been studied by all members of the Court who agree that it is a correct statement of the law, therefore, the mandate affirming the judgment of the lower court is ordered reissued.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, J. J., concur.