ON MOTION FOR REHEARING GRANTED

PER CURIAM.
The original panel opinion in this case is withdrawn and the following is substituted:[1]
This is an appeal from a non-final order granting the contract purchasers’ motions for final summary judgment on the issue of priority of liens in a mortgage foreclosure action.
Reviewing the record on the consolidated appeals in favor of BancFlorida, the facts are as follows: Shores Contractors, Inc. (“Shores” or “developer”) was in the business of developing lots and constructing single family homes in Dade County. At times Shores would buy undeveloped lots and hold them in inventory for future development. On other occasions Shores would hold undeveloped lots as an equitable owner under an option contract with American Newlands. Shores had a $4,000,000 line of credit with BancFlorida to be used for the construction loans.
When Shores was ready to develop a project into single family homes, in this case Oakwood At The Hammocks, Shoreline At The Hammocks, Oakwood Estates III At The Hammocks and Lakeside At The Hammocks, lots would be sold to individual contract purchasers. Each contract purchaser, most often a husband and wife purchasing the home jointly, entered into a purchase and sale agreement[2] with Shores and thereafter obtained a mortgage commitment for the home that Shores would build.[3] On the lots already owned by Shores and secured by a mortgage from BancFlorida, Shores would take the purchase and sale agreement, the mortgage commitment and the purchaser’s deposit to BancFlorida. BancFlorida then entered into a separate construction loan agreement for each lot sold to a contract purchaser. A portion of the construction loan was used to pay off the mortgage BancFlorida held on the particular undeveloped lot. The purchase and sale agreement required the contract purchasers to make four progress payments during the course of the construction process. On those lots held by Shores as the equitable owner under the option contract, a portion of the construction loan monies was used to pay off the balance owing to American Newlands. Each loan was recorded.
At some point the developments at issue failed. Shores and others filed suit against BancFlorida alleging that the bank’s breach of the construction loan agreements caused the failure.[4] The contract purchasers intervened as plaintiffs. During the litigation, the parties agreed to sell the properties to a third party and to use the proceeds of the *1331 sale to create a fund from which damages could be paid. In order to sell the properties, it was necessary to foreclose on the lots to extinguish all liens. The parties agreed and stipulated to a final summary judgment of foreclosure entered in favor of BancFlori-da in September 1993. The stipulation provided that all liens or claims by each party were directed solely to the entire fund and not solely to the specific sales price of an individual lot.
The contract purchasers thereafter filed their motions for summary judgment against BancFlorida, with supporting affidavits, asserting that each contract purchaser had an equitable lien on his particular lot and any improvements to it and that the equitable lien was superior to BancFlorida’s construction loan. An affidavit supporting the contract purchasers’ position was filed by the developer. BancFlorida filed two affidavits in support of its position.[5] One hearing on the final summary judgment motions was held as to 21 loans held by contract purchasers and final summary judgment was entered. A second hearing for final summary judgment was held on the remaining contract purchaser’s motion and final judgment was entered in that case also. BancFlorida filed appeals from each of the two final orders. The appeals were later consolidated.
The trial court entered final summary judgment in favor of the contract purchasers upon a finding that their equitable hens on the various properties had priority over any mortgage recorded by BancFlorida. The court found that before BancFlorida loaned any money to Shores for construction of the single family homes, BancFlorida had actual notice of the purchase and sale agreements and the deposits paid by the contract purchasers to the developer.[6] The court ruled that summary judgment was appropriate because all of the documentation was before the court at the time of the hearing and because the question of who was a purchase money mortgagee was a question of law for the court to decide. It then went on to rule, as a matter of law, that the bank could not be a purchase money mortgagee in this situation. It is very clear that the trial court was solely concerned with the equities of the case and, for the trial court, the equities favored the contract purchasers as members of the general public less knowledgeable in these matters over the sophisticated bank and the sophisticated builder.
The undisputed facts of this case, i.e. that before the bank loaned any money to the developer it had in hand a purchase and sale agreement for a specific piece of property and a deposit in the amount of 10% of the total purchase price; and that when the bank made the construction loan to the developer it deducted the cost of purchasing the land from the loan proceeds and gave the developer the balance of the proceeds, sets up a clash between two competing theories of real property law. BancFlorida is a purchase money mortgagee but it is also a subsequent creditor with notice of the contract purchasers’ equitable claims against the property.
Two cases epitomize the tension between the two theories: Carteret Sav. Bank v. Citibank Mtg. Corp., 632 So.2d 599 (Fla.1994) and Caribank v. Frankel, 525 So.2d 942 (Fla. 4th DCA 1988). In Caribank, contract purchasers paid a $60,000 deposit to a developer for the purchase and construction of a home. The developer thereafter obtained a purchase money mortgage from Caribank. At the time Caribank gave the mortgage, it had actual knowledge of the developer’s contract with the contract purchasers and actual knowledge of the $60,000 deposit for the purchase and construction of the house. When the developer later went bankrupt, without building the home or returning the deposit, Caribank sued to foreclose the mortgage. The trial court granted summary *1332 judgment in favor of the contract purchasers, finding that their equitable lien had priority over Caribank’s purchase money mortgage. The district court affirmed, and held that because the bank was not a bona fide purchaser for value, it took and recorded its mortgage with knowledge of and subject to the claims of the contract purchasers in and to the subject property. Id. at 944. The district court, citing 44 Fla.Jur.2d Real Property Sales and Exchanges § 263 (1984), stated that actual knowledge of a prior unrecorded conveyance or mortgage is equivalent to the recording of the instrument. Id.
The second case, Carteret, 632 So.2d at 599, involved a joint venture purchase of land from a seller who had purchased the land just the day before.[7] Carteret made an acquisition and construction loan to the joint venturers to finance their development of a warehouse storage facility. The joint ventur-ers defaulted on the loan and Carteret sued to foreclose the mortgage. The complaint named additional lienholders. Citibank was one such lienholder because its predecessor in interest had a $66,628.40 recorded judgment, which predated Carteret’s mortgage, against one of the joint venturers.
The parties stipulated that $678,521 of the loan proceeds went to land acquisition costs and the balance to construction and land development. The parties agreed that Car-teret’s purchase money mortgage had priority over the prior judgment but they disagreed over what portion of the loan constituted the purchase money mortgage. After reviewing cases from other jurisdictions, the district court held that only the portion of the proceeds used to acquire land constituted a purchase money mortgage. The balance of the loan proceeds were not protected by the purchase money mortgage. The Florida Supreme Court affirmed.
BancFlorida relies heavily on the definition of a purchase money mortgagee in the Carteret case and argues that once it is determined that BancFlorida is a purchase money mortgagee it automatically has priority under Carteret over the contract purchasers. We agree with BancFlorida that the trial court erred in ruling that it was not a purchase money mortgagee. It was, at least with regard to the 18 loans made where a portion of the proceeds was used to exercise the option Shores held with American New-lands Corp. to acquire the lots.[8] But the fact that BancFlorida is a purchase money mortgagee is not dispositive of the case.
The facts of Carteret, and the legal issue presented, are very different from the undisputed facts herein. Carteret involved a third party judgment creditor and no dispute over the priority of the liens.[9] The parties agreed that the purchase money mortgage had priority over the claims of the third party. The only question before the court was extremely narrow: how much of the proceeds constituted a purchase money mortgage.
Florida has adopted a notice provision as the benchmark for assessing the priority of liens on real property and “[a] grantee taking title to land with knowledge of prior claims is bound by those claims.” Moyer v. Clark, 72 So.2d 905, 906 (Fla.1954). Section 695.01, Florida Statutes (1989) states in relevant part:
No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law *1333 or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; ...
(emphasis supplied).
In the case at issue, knowledge is part and parcel of the same transaction in which the purchase money mortgage was created. BancFlorida structured this transaction and required the existence of pre-qualified contract purchasers before it would lend any money to Shores under the construction loan line of credit. It is well settled law in Florida that purchase money mortgage priorities may be subject to the equities of the particular transaction. Van Eepoel Real Estate Co. v. Sarasota Milk Co., 100 Fla. 438, 129 So. 892 (1930). Thus, we agree with the reasoning of CaHhank that BancFlorida’s actual knowledge of the contract purchasers’ equitable liens against Shores, which arose before BancFlorida executed purchase money mortgages to Shores as part of the construction loan, and indeed, at BancFlorida’s insistence, gave the equitable liens priority over the purchase money mortgages.
BancFlorida’s other points on appeal are without merit.
The final summary judgments are affirmed. Because this appeal has been considered twice, no further motions for rehearing will be entertained. We certify the following question as being of great public importance:
Where a lender requires a pre-qualified contract purchaser before it will lend on the construction loan which creates a purchase money mortgage, does the contract purchaser’s prior equitable lien against the purchase money mortgagor have priority over the lender’s subsequent purchase money mortgage?

.BancFlorida filed two initial briefs in this case. The first brief was filed in May 1994, along with a voluminous appendix. A second brief, also with an appendix, was filed after the cases were consolidated. The second initial brief and appendix were circulated to the panel of judges. Thus, none of the documents filed in the first initial appendix were before the panel at the time the opinion in this case was written. Fla. R.App.P. 9.210 specifies what briefs are permitted to be filed by the parties to an appeal. Parties wishing to file another brief after cases have been consolidated are reminded that they must first ask the court's permission. The brief and additional appendix should be clearly identified as supplemental. We apologize to the parties for the confusion and any inconvenience.

. By its terms, this document could not be recorded.

. For purposes of this appeal, we are focusing on only the 22 loans at issue. The number of actual contract purchasers is larger.

. There were further allegations that the bank did nothing to protect the homes from vandalism and from Hurricane Andrew and that, as a result, the amount of money for which the properties were eventually sold was greatly reduced.

. Only the affidavit filed by Brenda Jeffries is relevant for our analysis.

. Indeed, Brenda Jeffries acknowledged that BancFlorida would not have made the construction loan on any lot without having a purchase and sale agreement, deposit and mortgage commitment.

.The facts of this case can be found in Citibank Mtg. Corp. v. Carteret Sav. Bank, 612 So.2d 599 (Fla. 4th DCA 1992). It should be noted that the Fourth District Court of Appeal also issued the decision in Caribank. It would seem reasonable to expect that if the court intended Carteret to set out a new rule of law with regard to the priorities of purchase money mortgages, it would have had to distinguish, recede from or overrule its prior opinion in Caribank.

. In the other four cases. Shores already owned the lots, with BancFlorida as the mortgagee. In those cases, a portion of the construction loan proceeds went to pay off the BancFlorida purchase money mortgage.

. From the facts given in the district court's opinion, it is not possible to determine whether Carteret had notice of the prior judgment.