689 So.2d 1052 (1997)
BANCFLORIDA, etc., Petitioner,
v.
Robert T. HAYWARD, et ux., et al., Respondents.
No. 86646.
Supreme Court of Florida.
February 27, 1997.
Robert C. Grady of Katz, Barron, Squitero & Faust, P.A., Miami, and Herbert Stettin of Herbert Stettin, P.A., Miami, for Petitioner.
Mark V. Silverio and Cynthia Byrne Hall of Silverio & Hall, Miami, and Glenn J. Holzberg, Miami, for Respondents.
GRIMES, Justice.
We review BancFlorida v. Hayward, 659 So.2d 1329, 1333 (Fla. 3d DCA 1995), in which the court certified the following question as being of great public importance:
Where a lender requires a pre-qualified contract purchaser before it will lend on the construction loan which creates a purchase money mortgage, does the contract purchaser's prior equitable lien against the purchase money mortgagor have priority over the lender's subsequent purchase money mortgage?
We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Shores Contractors, Inc. (developer) was in the business of developing lots and constructing single-family homes in several subdivisions. American Newlands owned the real property in these subdivisions. The developer held an option to acquire individual lots from American Newlands. The developer arranged for BancFlorida (bank) to provide funds for the acquisition of the individual lots and for the construction of single-family homes on those lots. The most frequent *1053 method of lot acquisition and construction[1] required that the developer obtain a written purchase and sale agreement on a particular lot from a prequalified purchaser. The bank would then make a construction loan to the developer, with a portion of the proceeds being paid directly to American Newlands in exchange for deeds of the lots to the developer. None of the payments made by the purchasers on their contracts with the developer were used to acquire the lots.
Unfortunately, the developments failed, and the homes were not completed. The developer filed suit against the bank, alleging that breach of the construction loan agreements caused the failure. In turn, the bank sought foreclosure of its mortgages on the lots. Thereafter, the contract purchasers intervened and claimed equitable liens on the lots described in their purchase and sale agreements. The bank responded by claiming the superiority of its mortgages.
By agreement of all parties, summary final judgment of foreclosure was entered which permitted the bank to foreclose on the lots. They were sold at foreclosure sale, and the bank was the successful purchaser. By stipulation, the properties were then sold in bulk by the bank to a third party and the net proceeds were deposited in an escrow account pending the ultimate disposition of the competing claims.
The trial court entered summary judgment in favor of the contract purchasers, holding that they held equitable liens on the lots which were entitled to priority over the bank's mortgages. The premise for the trial court's holding was that before the bank loaned any money to Shores for construction of the homes, the bank had actual notice of the purchase and sale agreements and the deposits paid by the contract purchasers to the developer. The court rejected the bank's contention that its mortgages were purchase money mortgages.
Contrary to the finding of the trial court, the Third District Court of Appeal held that the bank's mortgages were purchase money mortgages. Nevertheless, it affirmed the judgment in favor of the contract purchasers on the following rationale:
In the case at issue, knowledge is part and parcel of the same transaction in which the purchase money mortgage was created. BancFlorida structured this transaction and required the existence of pre-qualified contract purchasers before it would lend any money to Shores under the construction loan line of credit. It is well settled law in Florida that purchase money mortgage priorities may be subject to the equities of the particular transaction. Van Eepoel Real Estate Co. v. Sarasota Milk Co., 100 Fla. 438, 129 So. 892 (1930). Thus, we agree with the reasoning of Caribank [v. Frankel, 525 So.2d 942 (Fla. 4th DCA 1988)] that BancFlorida's actual knowledge of the contract purchasers' equitable liens against Shores, which arose before BancFlorida executed purchase money mortgages to Shores as part of the construction loan, and indeed, at BancFlorida's insistence, gave the equitable liens priority over the purchase money mortgages.
BancFlorida v. Hayward, 659 So.2d at 1333.
At the outset, we agree with the court below that the bank's mortgages were purchase money mortgages. Traditionally, a purchase money mortgage was a mortgage given by the purchaser of real property directly to the seller to secure some or all of the purchase price. 1 Paul C. Gibson, Florida Real Estate Transactions § 4:01 (1996). However, it is well settled that where the proceeds of a third-party mortgage loan are used to purchase property, the mortgage on that property is also considered to be a purchase money mortgage. Cheves v. First Nat'l Bank, 79 Fla. 34, 83 So. 870 (1920); Sarmiento v. Stockton, Whatley, Davin & Co., 399 So.2d 1057 (Fla. 3d DCA 1981). 2 Ralph E. Boyer & William H. Ryan, Florida Real Estate Transactions § 32.22 (1996), explains:
The most common real property security transaction involves a "purchase money" loan from a bank, savings and loan association, or other lender, that enables the borrower to purchase the subject property. *1054 The seller receives the loan proceeds, less whatever may be due to the seller's purchase money lender, if any, and conveys title to the purchaser. The purchaser, then being the owner, executes and delivers a mortgage in favor of the lender. As long as a mortgage is executed in conjunction with a purchase and given as security for a portion of the purchase price, it is a purchase money mortgage, even though the money is advanced by a third party and the mortgage is executed in the third party's favor.
The determination that a mortgage is a purchase money mortgage is important because purchase money mortgages take priority over all prior claims or liens that attach to the property through the mortgagor. Id. As this Court explained in Van Eepoel Real Estate Co. v. Sarasota Milk Co., 100 Fla. 438, 450-51, 129 So. 892, 897 (1930):
[A] purchase-money mortgage, made simultaneously with the conveyance to the mortgagor, takes precedence over any lien arising through the mortgagor, even though the latter be prior in point of time.
This rule applies even though the purchase money mortgagee was put on constructive notice of the prior lien by virtue of its recording in the public records. Thus, a purchase money mortgage has been recognized to be senior to prior recorded judgment liens, Citibank Mortgage Corp. v. Carteret Sav. Bank, 612 So.2d 599 (Fla. 4th DCA 1992); Sarmiento; Associates Discount Corp. v. Gomes, 338 So.2d 552 (Fla. 3d DCA 1976), and a prior recorded welfare lien. Pinellas County v. Clearwater Fed. Sav. & Loan Ass'n, 214 So.2d 525 (Fla. 2d DCA 1968).
Presumably, the rule giving superiority to purchase money mortgages came about because of the recognition that the prior lienholder is no worse off than before. Without the proceeds from the purchase money mortgage loan, the property would not have been acquired. However, purchase money protection applies only to the amount of the proceeds actually used to acquire the property and its existing improvements. Carteret Sav. Bank v. Citibank Mortgage Corp., 632 So.2d 599 (Fla.1994).
When these principles are applied to the instant case, it is clear that the court below erred in holding that the claims of the contract purchasers were superior to the bank's purchase money mortgages. That court relied heavily upon the fact that the bank had actual notice of the purchase and sale agreements. However, purchase money mortgages have superiority over prior recorded liens, and actual notice is simply the equivalent of constructive notice.
We cannot answer the certified question as worded because it presupposes that the contract purchasers had a prior equitable lien on the lots. However, at the time the purchase and sale agreements were executed, the developer did not own the lots but merely held an option to purchase. Under Florida law, an option to purchase property creates neither an equitable interest nor an equitable remedy. Wolfle v. Daugherty, 103 Fla. 432, 137 So. 717 (1931). Therefore, the developer had no real property interest upon which an equitable lien could attach.
The contract purchasers rely heavily upon Caribank v. Frankel, 525 So.2d 942 (Fla. 4th DCA 1988). On facts analogous to those in the instant case, the district court of appeal held that a contract purchaser had a prior lien over a subsequent purchase money mortgage given by the developer to purchase the lot he had contracted to sell. It may be that the law applicable to the priority of purchase money mortgages discussed above was never raised because the opinion makes no mention of it. In any event, on its facts Caribank was erroneously decided.
We also reject the contract purchasers' argument for estoppel predicated upon this Court's decision in Van Eepoel Real Estate Co., 100 Fla. at 438, 129 So. at 892. That case involved a dispute between a purchase money mortgagee and a mechanic's lienor. A purchase money mortgage had been executed prior to the time the mechanic commenced work on the property. However, the mortgage was not recorded until after the work was done. Under these circumstances, the court held that the mortgagee was estopped to claim priority because of its failure to record the mortgage until after the mechanic had completed his work without any *1055 knowledge of the existence of the mortgage. These facts are inapposite to the instant case. Here, there is no contention that the purchase money mortgages were not timely recorded, and the bank did nothing to mislead the contract purchasers.
The legal principles applicable to the remaining four lots in litigation are different but the outcome is the same. The developer had already acquired these lots through the execution of recorded purchase money mortgages at the time the purchase and sale contracts were executed. Thereafter, the bank entered into construction loan agreements with the developer which required that the previous bank mortgage be satisfied out of the funds advanced under the new loan. The construction loan agreement required a new first mortgage lien in favor of the bank to be placed on the subject property. Obviously, the parties intended that the bank would preserve the same security it held for its earlier loan. Under these circumstances, the bank was entitled to the priority established by its original mortgage under the doctrine of equitable subrogation.
In Schilling v. Bank of Sulphur Springs, 109 Fla. 181, 147 So. 218 (1933), a third-party purchase money mortgage was utilized by the mortgagor to acquire certain property. Three years later, the purchase money mortgage matured, and the mortgagor went to the bank in order to obtain a mortgage loan to satisfy the purchase money mortgage. However, there was a judgment lien against the mortgagor which predated the purchase money mortgage. The bank loaned the money to the mortgagor to satisfy the original purchase money mortgage and recorded a new mortgage. On these facts, this Court held that equity required that the bank be subrogated to the rights of the original third-party money mortgage. We held that equity would not displace the purchase money mortgage since the result would leave the holder of the judgment lien in no worse position than if the original purchase money mortgage had not been discharged. See also Federal Land Bank v. Godwin, 107 Fla. 537, 145 So. 883 (1933)(new mortgage given by same mortgagee as renewal of old mortgage held to take priority over intervening mortgage).
Accordingly, we hold that the bank's mortgages on the twenty-two lots have priority over the claims of the contract purchasers but only to the extent that the bank's funds were used to purchase the lots. The bank loses its priority with respect to the additional construction monies advanced to the developer.
We quash the decision below and remand for further proceedings pursuant to this opinion.
It is so ordered.
OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Eighteen of the twenty-two lots in issue in this suit were acquired and financed in this manner.