724 So.2d 585 (1998)
ASSOCIATION OF POINCIANA VILLAGES, Appellant,
v.
AVATAR PROPERTIES, INC., et al., Appellees.
No. 97-2619.
District Court of Appeal of Florida, Fifth District.
October 23, 1998.
Rehearing Denied February 3, 1999.
Barbara W. Davis Holland & Knight, L.L.P., Lakeland, for Appellant.
Norman S. Segall of Keith Mack, L.L.P., Miami, for Appellee.
W. SHARP, Judge.
The Association of Poinciana Villages, Inc. (Association), a not-for profit homeowners association, appeals from a final summary judgment, which holds that Avatar Properties, Inc.'s (Avatar) purchase money mortgage on property owned by Wendall Kearns in the development encompassed by the Association, is superior to the Association's lien for assessments. We reverse.
Avatar filed suit on May 19, 1997 to foreclose its mortgage against Wendall Kearns and the Association. Avatar financed the purchase of property in the Association for Kearns, and recorded its mortgage on November 17, 1989. On August 19, 1996, the Association recorded its claim of lien for assessments. The sole issue on appeal is which has priority over the other: the purchase money mortgage or the Association's lien for assessments?
The Association is the master umbrella association of homeowners in the development known as Poinciana. Poinciana includes various villages, each with is own homeowners association. The property at issue here is located in Poinciana Village One Association, Inc. It is subject to the Articles of Incorporation, and the Declarations of *586 Covenants of both the Association and Village One.
The Articles of Incorporation for Village One were filed on June 26, 1972. It later delegated its power and authority to levy and enforce assessments to the Association. The Association's Declarations were recorded on July 7, 1971. Article IX of Village One's Articles authorizes Village One to make certain assessments for the maintenance and care of common areas, and authorizes enforcement of assessment liens on all property in Village One.
With regard to lien priorities for assessment liens, the Amended Article IX for Village One[1] provides:
Subject only to taxes imposed by any governmental authority, each and every assessment of lien which the Association has authority to impose, together with any collection costs, penalties or interest authorized to be established, reserved or imposed hereby, or under the Deed of Restriction, shall be superior to any mortgage placed on any of the properties in this Village except that said assessment or lien is specifically subordinated and made junior to such mortgage by an instrument in writing given by and authorized by the Board of Directors and shall be subject and subordinate to the lien of a mortgage given by a federally insured lending institution as well as to the lien of a mortgage given by Parkway Mortgage Company, Inc., which affects the subject property. (emphasis supplied)
Avatar was formerly known as GAC Properties, Inc. It was the original owner and developer of Poinciana, and thus should have been familiar with the covenants and restrictions of record. Further Avatar's deed to the mortgagor, Kearns, expressly provides it is:
Subject to ... matters contained in the Deed of Restrictions and any other reservations of record, Articles of Association of Poinciana Village Association, and By-Laws thereof Poinciana Subdivision, which provides among other matters for mandatory membership in Poinciana Village Association, assessments imposed on the property for maintenance and as improvement fees, with a right granted to the Association to impose a lien on the above-described property for failure to pay assessments as they become due, all of which are covenants running with the land.
Holly Lake Association v. Federal National Mortgage Ass'n, 660 So.2d 266 (Fla.1995) is the controlling decision regarding priorities of mortgages and assessment liens. As Justice Grimes pointed out, the court was not departing from the traditional analysis of "first in time is first in right." The question is, which was first? Does the assessment lien date from the time it is recorded or a party has notice of it, or does it date from the time the declarations and restrictions authorizing the lien to be assessed were placed of record?
The court held in Holly Lake that the assessment lien placed by a homeowners' association dated from the time it was itself recorded, and not from the time that the declaration and covenants were placed of record. Thus the mortgage prevailed over the assessment lien because the mortgage was recorded before the lien.
However, the court distinguished that case from Bessemer v. Gersten, 381 So.2d 1344 (Fla.1980) and suggested that the result might be differentthat is, the lien would date from the time the declarations and covenants were recordedif the declaration contained specific language indicating that the lien relates back to the filing of the declaration, or that it otherwise takes priority over intervening mortgages. In Holly Lake, the court pointed out that the declaration merely gave the homeowners association the right to place liens against the properties for unpaid charges and assessments and to enforce them.
The court reasoned in Holly Lake that it would not be fair to the mortgagee in that *587 case to give priority to the assessment lien because there was nothing in the declaration of covenants which put the mortgagee on notice that the homeowners association was claiming a continuing lien on the property securing the monthly maintenance assessments. If the declaration had provided that the assessment lien had priority over mortgages filed after the declaration was recorded, the result would have been to give the lien priority. The court cited New York Life Ins. & Annuity Corporation v. Hammocks Community Ass'n, Inc., 622 So.2d 1369 (Fla. 3d DCA 1993) with approval for that statement in the case.
In the Hammocks case, a 1984 amendment to the declaration of covenants for the association provided that the association would have the right to enforce all unpaid assessments for maintaining and administering common properties and improvements by asserting a lien against properties encompassed in the development. The declaration also provided that the lien would be prior to a subsequently given first mortgage which is amortized over a period of less than ten years. The mortgage in that case was a five-year mortgage. Thus the court gave priority to the assessment lien over the mortgage (even though it had been recorded after the mortgage), based on the fact that the declaration was filed before the mortgage.
The language quoted above in the Association's Declaration of Covenants is as clear as that in the Hammocks case. Although Article IX does not expressly say assessment liens will date back to the time of filing the Declaration, it does provide that the liens so asserted have priority over "any mortgage" placed on the property, with exceptions that do not apply in this case. There would be no need to put this language in the Declaration if the assessment liens dated for priority purposes upon being recorded and were not intended to "prime" mortgages recorded after the Declaration but prior in time to recording the assessment liens.
We also think the language in Article IX was sufficient to put mortgagees or subsequent owners on notice that later recorded assessment liens would have priority over their interests. Thus it is fair to assert the "first in time, first in right" rule against them, based on the Declaration which was recorded. Although Avatar was the original developer of Poinciana, and thus responsible for writing the Declaration and recording it in the first place, its actual knowledge of the content of Article IX is not a critical fact. Constructive notice given through matters properly of record suffices.
Avatar argues that it should prevail because it is a "purchase money" mortgagee and as such it takes priority over all prior claims or liens that attach to the property through the mortgagor. BancFlorida v. Hayward, 689 So.2d 1052 (Fla.1997). We doubt that BancFlorida means that purchase money mortgages always take priority over all other parties or claimants. The property in this case was already burdened with the assessment lien possibility prior to the purchase money mortgage being obtained and it did not emanate from the mortgagor. If Avatar's position were correct, the Florida Supreme Court's discussion in Holly Lake concerning priority of intervening mortgages after the filing of a declaration such as the one in this case, would have been superfluous.
REVERSED.
GRIFFIN, C.J., and DAUKSCH, J., concur.
NOTES
[1] The original articles of incorporation for the Poinciana Village One Association, Inc., contained slightly different language in its Article IX. Nonetheless, this language also provided that the Association's lien "shall be superior to any mortgage placed on any of the properties in this Village ... unless ... specifically subordinated... by the Board of Directors."